**In re SEAN T. et al.**

[Cite as *In re Sean T.*, 164 Ohio App.3d 218, 2005-Ohio-5739.]

Court of Appeals of Ohio,
Sixth District, Huron County.

Nos. H–04–009 and H–04–010.

Decided Oct. 28, 2005.

Charles P. Derby, for appellant, Jenny T.

PIETRYKOWSKI, Judge.

{¶ 1} These consolidated cases are before the court on appeal from judgments of the Huron County Court of Common Pleas, Juvenile Division, which granted legal custody of Sean and Dakota T. to their maternal grandparents and granted visitation rights to their mother, appellant Jenny T. Because we find that the lower court did not abuse its discretion in awarding legal custody to the boys' grandparents, we affirm the judgment of the trial court.

{¶ 2} Sean and Dakota T. are the natural children of Jenny and Rhys T. When Dakota was born in 1996, the family lived with Jenny's parents, Robert and Virginia S., in Willard, Ohio. They continued to live with Robert and Virginia when Sean was born in 1998. In the fall of 2000, however, Jenny and Rhys had a falling out with Robert and Virginia, and the T. family moved in with Rhys's mother, Kay T., also in Willard. Subsequently, in June 2001, Jenny moved to Tennessee to find work, leaving the boys with her parents. Shortly thereafter, Rhys took the boys back to his mother's house with him. On July 11, 2001, the Willard Police Department responded to a citizen's complaint that Dakota was seen running from Kay T.'s home, stating that he was told to leave and that they did not love him. Officer Mark Holden arrived at the residence to find Sean and Dakota living in deplorable conditions. The police and on-call social workers

observed four dogs and six cats living in the home, which was cluttered with fecal matter, dog hair, numerous bags of trash, and broken glass. In addition, officers reported a terrible odor permeating the home. Sean and Dakota were removed from the home and, following a shelter-care hearing, their temporary custody was awarded to the Huron County Department of Job and Family Services ("HCDJFS"). Sean and Dakota were placed in a foster home for a short time, after which the lower court granted Robert and Virginia S. temporary custody of the boys under the protective supervision of the HCDJFS.

{¶ 3} Contemporaneously with the boys' removal from Kay T.'s home, complaints were filed in the court below alleging that Sean and Dakota were dependent. After Jenny and Rhys admitted to the allegations of the complaints at the adjudicatory hearing, the lower court found by clear and convincing evidence that the children were dependent as alleged in the complaints and ordered that the boys remain in the temporary custody of Robert and Virginia S. The court subsequently held a dispositional hearing, after which it ordered that the boys remain in the temporary custody of Robert and Virginia under the protective supervision of the HCDJFS. The court further granted Rhys and his mother visitation at Middleground, granted Jenny visitation at her parents' home as agreed upon between her and her parents, ordered the HCDJFS to conduct home studies on each parent's residence, ordered Jenny and Rhys to complete a parenting class for parents of young children, and ordered Rhys to participate in mental-health counseling. An initial case plan was developed and filed with the court, with reunification as the goal. Because Jenny was living in Tennessee, most of the services and requirements of the plan were directed toward Rhys. Jenny, however, was required to find and maintain employment that would provide for the boys' needs. The court approved the case plan and ordered both parents to locate, arrange for, and show proof to the court and social worker of daycare arrangements, a Head Start program in his/her area, and a local school with speech therapy facilities in his/her area. Finally, the court ordered both parents to locate, arrange for, and show proof to the court and the social worker of adequate resources to be able to care for the children.

{¶ 4} Subsequently, an amended case plan was filed with the court that included a requirement that appellant enroll in counseling to deal with attachment issues and to work on the issues that had led her to her current situation. The plan also required appellant to maintain a safe, stable home for a period of at least six months and to maintain stable employment for a period of at least six months.

{¶ 5} On May 23, 2002, Robert and Virginia S. filed a motion in the court below seeking legal custody of their grandsons. Appellant filed a motion objecting to her parents' motion and seeking reunification with her children. Appellant

asserted that she had substantially complied with the case plan and that returning the children to her care was in their best interest. She also requested an order from the court directing the HCDJFS to conduct a home study of her residence in Clarksville, Tennessee. The lower court subsequently ordered the HCDJFS to arrange for a home study of appellant's home and to submit a report to the court.

{¶ 6} Ultimately, three home studies were completed regarding appellant's home in Clarksville, Tennessee, but appellant's home was never approved as an appropriate placement for the boys.

{¶ 7} On September 3 and 24, and December 9, 2003, the cases proceeded to a trial on the motion for legal custody. Julie Hoover, the social worker assigned to these cases, Margaret Kern, the guardian ad litem, Virginia S., the boys' maternal grandmother, appellant, and Kelley Gildersleeve, a friend of appellant, testified. It is noteworthy that at the beginning of the trial, Rhys T. informed the court that he did not object to the motion for legal custody and that he approved of Robert and Virginia S.'s taking legal custody of the boys. He is not a party to this appeal, and all of the issues before this court deal solely with appellant, Jenny T.

{¶ 8} Subsequently, the lower court magistrate issued a decision, including findings of fact and conclusions of law. After setting forth the facts that led to the court's finding of dependency, the magistrate made the following findings.

{¶ 9} Shortly before the inception of these proceedings, appellant moved to Tennessee. She has no immediate or close family in the Clarksville, Tennessee area, and, although she claimed to have stayed in Tennessee for employment reasons, her first job paid minimum wage, and the job she held at the time of the trial below paid $7.95 per hour. At the time of the trial below, appellant had maintained that job for the preceding one and one-half years.

{¶ 10} In order to visit with the boys and meet with the guardian ad litem and caseworker, appellant was required to travel to Norwalk, which created a hardship, although, as the lower court noted, one of appellant's own making. Appellant's home in Clarksville is spacious and clean. She lives in a safe neighborhood across the street from where she works which, the court noted, was convenient and economical. Nevertheless, the court made the following findings with regard to appellant's living situation.

{¶ 11} "Mother has consistently requested the boys be returned to her custody. The Court ordered the Huron County Department of Job and Family Services to complete a home study on mother's home. The Huron County Department of Job and Family Services submitted a home study request three times through the Interstate Compact and all three home studies did not recommend mother's

home; the first home study was returned without a recommendation due to no fault of mother's; the second study did not recommend placement due to mother's roommate and his past involvement with law enforcement; and the third and most recent home study found mother's home to be unsuitable due to mother's lack of compliance. Therefore, the Interstate Compact and State of Tennessee still will not approve Jenny [T.'s] home for Sean and Dakota.

{¶ 12} " * * *

{¶ 13} "The concern from the home study is not with the physical home, but that mother still has not initiated or completed any counseling, which has been ordered for months by the Court. In addition, the Tennessee authorities recommended therapy to prepare for the boys returning to her custody, just as the Court's psychologist recommended at the inception of the case. Concerns to be addressed included leaving the boys without a feasible plan for returning and working on ownership of her life and actions so she would not end up in a similar situation where she would have to temporarily abandon the boys. In addition, the home study and Court psychologist recommend mother address proper parenting and disciplining of the boys due to their undeveloped or wild behavior when the case originated. Mother had blatantly refused to take any ownership for the original situation that caused the Court's intervention, so she refused any counseling and only recently completed a parenting class."

{¶ 14} The lower court recognized that appellant had maintained employment and a stable home for the last one and one-half years, that she has made progress to take care of herself in a more adult and mature way, that she has consistently paid support for Sean and Dakota, and that she has health insurance for herself and the boys through her employment. The court further noted that if appellant had physical possession of the boys, she would no longer pay support, which would improve her financial situation and allow her to receive financial benefits through the state of Tennessee. Nevertheless, the court found that appellant's biggest obstacles were her lack of counseling and ongoing contact with the boys. The court found that the boys had spent most of their lives with their grandparents, that their grandparents had complied with all that had been asked of them by the court, the guardian ad litem, and the HCDJFS, and that, after the completion of a home study, the grandparents' home had been approved. In addition, all of the professionals involved in this case recommended that the boys not be returned to appellant at this time and that they remain with their grandparents. The court noted that while in their grandparents' care, the boys had made great strides regarding their cleanliness, manners, behavior, health, speech, and schooling. The boys, however, continue to need special services and support regarding their speech and education, and the guardian ad litem and social worker believe that the grandparents will best address those needs.

{¶ 15} Based on the facts as set forth above, the magistrate determined that placing Sean and Dakota with their mother at this time would be detrimental to them and would not be in their best interest. The magistrate then concluded that legal custody of the boys should be awarded to Robert and Virginia S. and that appellant should be granted visitation and companionship according to the court's standard schedule for long-distance visitation. Appellant did not file objections to the magistrate's report, and on February 23, 2004, the lower court issued a judgment entry adopting the magistrate's decision as the order of the court. The court then awarded Robert and Virginia S. legal custody of Sean and Dakota and granted appellant visitation with the boys according to the court's standard schedule for long-distance visitation. It is from that judgment that Jenny T. now appeals, raising the following assignments of error:

{¶ 16} "First Assignment of Error

{¶ 17} "The trial court erred in admitting evidence during the adjudication which was dispositional in nature; specifically, voluminous hearsay, double hearsay; direct opinions as to the 'best interest' of the children; and direct opinions of witnesses as to specific long-term placement for the children.

{¶ 18} "Second Assignment of Error

{¶ 19} "The trial court's decision was not supported by, and was against the manifest weight of the evidence, where the testimony elicited showed clearly that mother/appellant had substantially complied with a significant part of the plan's goals and objectives; was continuing her effort to comply with the case plan; and where no substantive evidence or testimony was presented to show that she could not complete case plan requirements within a reasonable time.

{¶ 20} "Third Assignment of Error

{¶ 21} "Where mother had shown by preponderance of evidence her substantial compliance with the agency's case plan; [sic] and where mother had shown ability to complete the case plan in a reasonable time, the trial court erred in its failure to consider mother's ability and continuing efforts in balancing the factors stated in reaching its decision; [sic] and erred in not first finding that both parents of the children were unsuitable before rendering its decision."

{¶ 22} Appellant's assignments of error are interrelated and will be addressed together. Appellant asserts that the judgment of the lower court was flawed in that it was based on improperly admitted hearsay evidence and was against the manifest weight of the evidence. Appellant further contends that the court, in reaching its decision, failed to consider the fact that she substantially complied with the case-plan requirements and was continuing to work on those requirements at the time of the trial below.

{¶ 23} Initially, we are compelled to comment on the nature of the proceedings below, as appellant's brief demonstrates some confusion on that matter. Appellant refers to statutory and case law dealing with the permanent termination of parental rights. Appellant's parental rights to Sean and Dakota have not been terminated. Rather, legal custody of the boys has been granted to Robert and Virginia S. Legal custody is "a legal status that vests in the custodian the right to have physical care and control of the child and to determine where and with whom the child shall live, and the right and duty to protect, train, and discipline the child and to provide the child with food, shelter, education, and medical care, all subject to any residual parental rights, privileges, and responsibilities." R.C. 2151.011(B)(19). Residual parental rights, privileges, and responsibilities mean "those rights, privileges, and responsibilities remaining with the natural parent after the transfer of legal custody of the child, including, but not necessarily limited to, the privilege of reasonable visitation, consent to adoption, the privilege to determine the child's religious affiliation, and the responsibility for support." R.C. 2151.011(B)(45). Accordingly, in light of the trial court's order, appellant has retained these residual parental rights, privileges, and responsibilities in Sean and Dakota. In addition, appellant retains the right to petition the court to modify or terminate its order granting legal custody to her parents. See R.C. 2151.353(E)(2) and 2151.42.

{¶ 24} In contrast, permanent custody is "a legal status that vests in a public children services agency or a private child placing agency, all parental rights, duties, and obligations, including the right to consent to adoption, and divests the natural parents or adoptive parents of all parental rights, privileges, and obligations, including all residual rights and obligations." R.C. 2151.011(B)(30). Because the lower court did not grant permanent custody of Sean and Dakota to a public children services agency or private child-placing agency, the statutes applying to permanent custody proceedings, namely R.C. 2151.414, and the clear and convincing evidence standard, to which appellant refers in her brief, do not apply to these cases.

{¶ 25} It is well established that natural parents have a fundamental liberty interest in the care, custody, and management of their children. *In re Hockstok*, 98 Ohio St.3d 238, 2002-Ohio-7208, 781 N.E.2d 971, at ¶ 16. Nevertheless, where a child has been adjudicated dependent, R.C. 2151.353(A)(3) provides that a trial court, in its sound discretion, may award legal custody of that child to a person other than the child's parents. *In re Guedel S.* (June 16, 2000), 6th Dist. No. L–99–1343, 2000 WL 770132. Matters within the court's discretion will not be reversed absent an abuse of that discretion. An abuse of discretion is more than an error of law or judgment; the term connotes that the court's attitude was

arbitrary, unreasonable, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.

{¶ 26} When determining custody between a parent and a nonparent in an original custody dispute, the Supreme Court of Ohio has declared that custody may not be awarded to the nonparent without a finding of parental unsuitability. *In re Perales* (1977), 52 Ohio St.2d 89, 6 O.O.3d 293, 369 N.E.2d 1047, syllabus. To demonstrate unsuitability, it must be shown by a preponderance of the evidence "that the parent contractually relinquished custody of the child, that the parent has become totally incapable of supporting or caring for the child, or that an award of custody to the parent would be detrimental to the child." Id.

{¶ 27} In the proceedings below, the court determined that granting custody of Sean and Dakota to appellant would be detrimental to the boys. When considering whether a placement with a parent would be detrimental, a trial court must avoid making it a determination based purely upon the "best interest of the child." In *In re Kenneth M.* (June 27, 1997), 6th Dist. No. L–96–177, 1997 WL 362467, we noted our agreement with a case from the Third District Court of Appeals, which stated:

{¶ 28} "A pure best interest test looks to the best custodial situation available for the child and then places the child there. Under *Perales,* parental custody is presumed to be in the best interests of the child unless it can be shown that placement with a parent will be detrimental to the child. *Thrasher v. Thrasher* (1981), 3 Ohio App.3d 210, 214 [3 OBR 240], 444 N.E.2d 431. * * * Simply because one situation or environment would have been the 'better' situation, does not mean the other is detrimental or harmful to the child." *In re Porter* (1996), 113 Ohio App.3d 580, 589, 681 N.E.2d 954.

{¶ 29} Upon a review of the record in this case, we must conclude that the trial court's finding that awarding custody of Sean and Dakota to appellant would be detrimental to the boys was supported by a preponderance of the evidence. At the time of the trial below, appellant had been living apart from the boys for over two years. During that time, although appellant made progress in maintaining a stable life, her financial situation was still precarious. For example, she did not like to drive her car to the Norwalk area for fear that it would be repossessed. Moreover, as the lower court pointed out, appellant's home has yet to be approved as an appropriate placement after three home studies. Finally, it is noteworthy that appellant lives in Clarksville, Tennessee, an approximately eight-hour drive from Norwalk. Sean and Dakota have lived in their grandparents' home for nearly their entire lives, and their extended family lives in the Norwalk area. Appellant has no family and very little support in the Clarksville area. In consideration of all of these factors, we cannot say that the trial court

abused its discretion in awarding Robert and Virginia S. legal custody of Sean and Dakota, and the second and third assignments of error are not well taken.

{¶ 30} In her first assignment of error, appellant contends that the trial court erred in admitting hearsay evidence during the adjudication proceeding below. Again, appellant has misconstrued the nature of the lower court proceedings.

{¶ 31} These cases started with complaints that alleged Sean and Dakota were dependent. Accordingly, the lower court was required to conduct a bifurcated proceeding. *In re Baby Girl Baxter* (1985), 17 Ohio St.3d 229, 233, 17 OBR 469, 479 N.E.2d 257. Under the adjudicatory phase, the court was to conduct a hearing to determine whether the petitioner had proven by clear and convincing evidence that Sean and Dakota were in fact dependent. Id. The record reveals that the lower court did hold an adjudicatory hearing on September 26, 2001. In its judgment of October 1, 2001, the lower court determined that at the adjudicatory hearing, appellant and Rhys T. admitted that the boys were dependent. Appellant has not provided this court with a copy of the transcript from the adjudicatory hearing, which was her duty under App.R. 9(B). "When portions of the transcript necessary for resolution of assigned errors are omitted from the record, the reviewing court has nothing to pass upon and thus, as to those assigned errors, the court has no choice but to presume the validity of the lower court's proceedings, and affirm." *Knapp v. Edwards Laboratories* (1980), 61 Ohio St.2d 197, 199, 400 N.E.2d 384.

{¶ 32} To the extent that appellant, in her first assignment of error, misidentifies the dispositional hearing as an adjudicatory hearing and claims that the lower court erroneously admitted hearsay evidence at that hearing, it is well established that at a dispositional hearing, "the court may admit evidence that is material and relevant, including, but not limited to, hearsay, opinion, and documentary evidence[.]" Juv.R. 34(B)(2). Accordingly, the lower court did not err in admitting hearsay evidence at the dispositional hearing below, and the first assignment of error is not well taken.

{¶ 33} On consideration whereof, the court finds that substantial justice has been done the party complaining, and the judgment of the Huron County Court of Common Pleas, Juvenile Division, is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Huron County.

Judgment affirmed.

HANDWORK, J., and SINGER, P.J., concur.