DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment of the Lucas County Court of Common Pleas, Juvenile Division, which granted legal custody of Donovan M. to his mother's aunt and uncle, Rhonda and David M. Because we find that the lower court did not abuse its discretion in awarding legal custody of Donovan to his mother's aunt and uncle, we affirm the judgment of the trial court.
 {¶ 2} Donovan M. was born to appellant in 2003. On May 26, 2005, appellee the Lucas County Children Services Board ("LCCSB") filed a complaint in dependency and neglect in the court below. The complaint alleged the following history. Lucas County Children Services ("LCCS") became involved with the M. family in September 2004. At that time, appellant was living with her boyfriend, Tim R., in his home. LCCS has a history with Tim R. dating back to 1994, in that he has been named as a sexual abuse perpetrator on three occasions, each having a different victim. In addition, the referrals to LCCS all alleged that Tim R. was a drug user, abusing cocaine and marijuana. The referrals also reported that appellant abused marijuana. Tim R.'s home, in which appellant and Donovan resided, was without water service and had no bathroom or kitchen facilities. Tim R. also owned the home next door, so the family would go next door to use the bathroom facilities. That home was occupied by a known sexual predator. The complaint alleged that appellant knew of the neighbor's sexual predator status but allowed Donovan to have regular contact with him. In addition, appellant left Donovan in Tim R.'s care while she was at school.
 {¶ 3} The complaint further asserted that based on the above information, neglect was substantiated and a safety plan was devised and agreed to by appellant. Appellant agreed to leave Tim R.'s home, moved into a friend's home and voluntarily placed Donovan with a relative. The safety plan included the provision that appellant would not allow unsupervised contact between Tim R. and Donovan. Appellant eventually obtained *Page 3 
her own independent housing, and Donovan was returned to her care, with the safety plan still in effect.
 {¶ 4} On January 27, 2005, LCCS learned that appellant allowed Tim R. to move into her home. LCCS attempted to implement a safety plan with appellant under which she would not leave Donovan in Tim R.'s care, but appellant refused. LCCS sought and was granted an ex parte order of temporary custody of Donovan on February 25, 2005. LCCS originally filed a complaint on February 28, 2005, but because the adjudication and dispositional hearings could not be scheduled within the statutorily defined time frame, that case was dismissed. LCCS then filed the complaint in the court below which alleged that Donovan was dependent and neglected and sought an award of temporary custody of him.
 {¶ 5} Following a shelter care hearing, the lower court awarded temporary custody of Donovan to LCCS. In addition, the court ordered that Tim R. was to have no contact with Donovan. A case plan was prepared and filed in the court below, which identified concerns to be addressed by the services offered to appellant. In particular, the plan required appellant to enroll in and successfully complete a sexual abuse education course to learn to identify signs of sexual abuse in children. It further required appellant not to allow a known or suspected sexual offender near her child. In addition, the plan required appellant to complete a diagnostic assessment with an approved mental health provider and follow all recommendations following that assessment; maintain stable housing with food, working utilities, and no physical hazards for her child; create and *Page 4 
maintain a drug free environment for her child; and provide random drug screens at the request of LCCS.
 {¶ 6} On October 14, 2005, LCCS filed an amended complaint in dependency and neglect in which it requested that legal custody of Donovan be awarded to appellant's aunt and uncle, Rhonda and David M., with whom he had been living. The amended complaint alleged that despite participation in some services, including counseling, appellant had failed to make progress in remedying the problems that caused Donovan's removal from appellant's home. With regard to counseling, the complaint alleged that appellant informed her counselor that she had no issues to discuss. She failed to attend counseling on a regular basis and often arrived late or left early. The complaint further alleged that appellant had not been compliant in her psychiatric care and medication, had not initiated anger management counseling or depression group counseling and had not obtained independent stable housing. With regard to sexual abuse prevention counseling and domestic violence counseling, the complaint alleged that the counselor was concerned because Tim R. was transporting appellant to those sessions and would become agitated or act out inappropriately if appellant's appointment ran late. Despite the court's issuance of a no-contact order between Donovan and Tim R., the complaint alleged that appellant had remained steadfast in her refusal to discontinue her relationship with Tim R. The complaint further alleged that when presented with the choice of remaining with Tim R. and risk having her child remain out of her care, appellant chose to remain with Tim R. Finally, the complaint alleged that Donovan had done extremely *Page 5 
well in his placement and was well integrated into the home of his great aunt and great uncle.
 {¶ 7} On February 6, 2006, the case proceeded to a hearing on adjudication at which the facts as set forth above were established. At the conclusion of the adjudication hearing, the court appointed magistrate found that Donovan was neglected. The court then proceeded to the dispositional hearing at which appellant's therapist and caseworker testified for LCCS. Appellant's therapist, Erin Guell, testified regarding appellant's lack of progress in therapy. In particular, Guell stated that appellant would often arrive late and/or leave early from therapy sessions even after being told that such actions could prevent her from regaining custody of her son. Nevertheless, appellant did not believe that she had any issues to discuss. Because of her attitude toward therapy, Guell testified that appellant's therapy would be terminated at their next session. Guell also stated that appellant was already discharged from the anger management group for missing too many sessions. Guell further testified that appellant refused to believe the sexual molestation allegations regarding Tim R.
 {¶ 8} Jamie Carter, the LCCS caseworker for appellant and Donovan, testified with regard to various services that were offered to appellant. Carter stated that when appellant signed the case plan, she objected to keeping her son away from Tim R. Although appellant did attend four sexual abuse education classes, Tim R. transported her to and from those sessions and caused a scene, screaming at the back door, if appellant was a few minutes late leaving the session. Tim R. also made threats toward Carter and *Page 6 
other agency staff so he is no longer allowed in the building. Carter further testified that appellant was unable to maintain stable housing and lived in at least four homes since Carter had been involved in the case. Although appellant had been consistent with her visits with Donovan, Tim R. transported her to and from those visits. At the time of the hearing below, a no contact order was still in place as to Tim R.'s contact with Donovan. Nevertheless, when asked to choose between Donovan and Tim R., Carter testified that appellant chose Tim R. With regard to Donovan, Carter testified that he has bonded very well with appellant's aunt and uncle, as well as with their six biological children. Carter stated that Rhonda and David M.s' home is suitable for the number of people in it, that Donovan has his own room, and that Donovan has had no behavioral problems since his placement in that home. Because of appellant's lack of progress on the case plan services and the risk of harm to Donovan if he is returned to appellant, Carter recommended that legal custody of Donovan be awarded to Rhonda and David M.
 {¶ 9} In addition to Guell and Carter, appellant testified in her defense at the hearing below. Appellant denied that she would ever choose a man over her child. She also refused to believe any of the sexual abuse allegations regarding Tim R. It is noteworthy that at the time of the hearing below, appellant was pregnant with Tim R.'s child, although she denied having a relationship with him. In addition, although she was not then living with Tim R., she was living in a house down the street from him in a home owned by his father. *Page 7 
 {¶ 10} In addition to the testimony of other witnesses at the hearing below, the court considered the report and recommendation of the guardian ad litem. The guardian ad litem recommended that legal custody of Donovan be awarded to appellant's aunt and uncle because the guardian did not believe that appellant was capable of recognizing dangers to her child and protecting him from those dangers. The guardian ad litem also recommended that appellant's visitation with Donovan be supervised or monitored until Rhonda and David M. believe that she has created an environment in which she is aware of dangers to Donovan.
 {¶ 11} In a magistrate's decision of February 9, 2006, the lower court determined that Donovan was neglected, awarded legal custody of him to Rhonda and David M., and determined that an award of legal custody was in Donovan's best interest. The court further ordered that Tim R. have no contact with Donovan and awarded appellant supervised parenting time with Donovan. Incorporated into the magistrate's decision were 16 enumerated findings of fact. Appellant responded by filing objections to the magistrate's decision in which she asserted that the determination of neglect was not supported by the evidence; the award of legal custody to a non-parent was not supported by the evidence; the court failed to find that there was a specific threat to the welfare of Donovan in appellant's continued association with a sex offender; the court failed to note the testimony of appellant's witnesses who had provided babysitting services for Donovan so that he would not have contact with Tim R.; and that the court's order of no contact between Tim R. and Donovan was not supported by the evidence. *Page 8 
 {¶ 12} On March 15, 2006, the lower court issued a judgment entry following an independent review of the magistrate's decision. Finding no error of law or other defect, the court adopted the magistrate's decision, found Donovan to be neglected by clear and convincing evidence and determined that an award of legal custody to Rhonda and David M. was in Donovan's best interest. In making that award, the court stated that LCCS had made reasonable efforts to prevent the need for placement and that continuation in the family home was contrary to Donovan's welfare. The court also awarded appellant supervised parenting time with Donovan and ordered that Tim R. was to have no contact with Donovan. Subsequently, in a judgment entry of May 19, 2006, the court, upon consideration of appellant's objections, found the objections not well-taken, and again concluded that the findings of fact and conclusions of law reached by the magistrate appropriately led to the award of legal custody. The court further concluded in that judgment that "mother's continued association with known sex offenders and her refusal to believe the offenses occurred, constitutes a threat to Donovan's safety if she has custody of him." Appellant now challenges the trial court's judgment on appeal.
 {¶ 13} Because the assignments of error are related they will be addressed together. Appellant contends that the lower court erred in finding that LCCS made reasonable efforts to reunite her with her child during the course of the proceedings below and that the award of legal custody was against the manifest weight of the evidence. *Page 9 
 {¶ 14} Before we specifically address appellant's assignments of error, we are compelled to comment on the nature of the proceedings below, as appellant's brief demonstrates some confusion on the matter. Appellant uses the terms legal custody and permanent custody interchangeably and cites to statutes and case law which deal with the permanent termination of parental rights. Appellant's parental rights to Donovan were not terminated. Rather, legal custody of Donovan was awarded to appellant's aunt and uncle. As we stated in In re SeanT., 164 Ohio App.3d 218, 2005-Ohio-5739, ¶ 23-24:
 {¶ 15} "Legal custody is `a legal status that vests in the custodian the right to have physical care and control of the child and to determine where and with whom the child shall live, and the right and duty to protect, train, and discipline the child and to provide the child with food, shelter, education, and medical care, all subject to any residual parental rights, privileges, and responsibilities.' R.C.2151.011(B)(19). Residual parental rights, privileges, and responsibilities mean `those rights, privileges, and responsibilities remaining with the natural parent after the transfer of legal custody of the child, including, but not necessarily limited to, the privilege of reasonable visitation, consent to adoption, the privilege to determine the child's religious affiliation, and the responsibility for support.' R.C. 2151.011(B)(45)."
 {¶ 16} Accordingly, pursuant to the trial court's order, appellant has retained these residual parental rights, privileges and responsibilities in Donovan. In addition, appellant retains the right to petition the court to modify or terminate its order granting legal custody to her aunt and uncle. R.C. 2151.353(E)(2) and 2151.42. *Page 10 
 {¶ 17} In contrast, permanent custody is "a legal status that vests in a public children services agency or a private child placing agency, all parental rights, duties, and obligations, including the right to consent to adoption, and divests the natural parents or adoptive parents of all parental rights, privileges, and obligations, including all residual rights and obligations." R.C. 2151.011(B)(30). Because the lower court did not grant permanent custody of Donovan to a public children services agency or a private child placing agency, the statutes that apply to permanent custody proceedings, namely R.C. 2151.414, do not apply to this case.
 {¶ 18} Under her first assignment of error, appellant contends that the lower court erred in finding that LCCS made diligent efforts to assist her in remedying the problems that initially caused Donovan to be placed outside of her home. The diligent efforts standard to which appellant refers, however, and which is found in R.C. 2151.414(E)(1), only applies to cases in which a public children services agency seeks permanent custody of a child. See R.C. 2151.414(A). Because LCCS did not seek permanent custody of Donovan, R.C. 2151.414 is not relevant to these proceedings. Rather, to determine the correctness of the lower court decision we must look to R.C. 2151.353.
 {¶ 19} It is well established that natural parents have a fundamental liberty interest in the care, custody, and management of their children.In re Hockstok, 98 Ohio St.3d 238, 2002-Ohio-7208, ¶ 16. Nevertheless, where a child has been adjudicated neglected, R.C. 2151.353(A)(3) provides that the trial court may award legal custody of that child to a person other than the child's parents. In re Christopher M, 6th Dist. No. L-06-1063, *Page 11 2007-Ohio-1040, ¶ 12; In re Sean T., supra ¶ 25. In order to grant legal custody of a neglected child to a non parent, a trial court must find, by a preponderance of the evidence, that legal custody is in the child's best interest. In re Christopher M., supra ¶ 12. On appeal, this court will not reverse an award of legal custody absent a showing of an abuse of discretion. Id. ¶ 13. An abuse of discretion is more than an error of law or judgment; the term connotes that the court's attitude was arbitrary, unreasonable or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219.
 {¶ 20} In the proceeding below, a preponderance of the evidence supported the trial court's findings that appellant has remained steadfast that she will not discontinue her relationship with Tim R., that she does not believe Tim R. has sexually offended others, and that she does not believe Tim R. would harm her child. Several witnesses also testified that when presented with the choice of remaining with Tim R. or leaving Tim R. to regain custody of Donovan, appellant would prefer to remain with Tim R. A preponderance of the evidence also supported the trial court's findings that Donovan has done extremely well living with appellant's aunt and uncle, that he is thriving and that he is well integrated into their home and family. Both the guardian ad litem and the LCCS caseworker believed that it was in Donovan's best interest to award legal custody of him to Rhonda and David M. Given this evidence, we cannot say that the lower court abused its discretion in awarding legal custody of Donovan to appellant's aunt and uncle.
 {¶ 21} Accordingly, the first and second assignments of error are not well-taken. *Page 12 
 {¶ 22} On consideration whereof, the court finds that substantial justice has been done the party complaining and the judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Mark L. Pietrykowski, P.J., Arlene Singer, J., William J. Skow, J. CONCUR. *Page 1