DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from the March 20, 2007 judgment of the Lucas County Court of Common Pleas, Juvenile Division, which granted legal custody of Antwan J. and Antwane J. to their paternal aunt, Shamika J. Because we find that the trial court did not abuse its discretion when it awarded legal custody to the children's paternal aunt, we affirm the court's judgment. *Page 2 
 {¶ 2} Antwan J. was born in 2001, his sister, Antwane J., was born in 2003. Appellant, Sha'vonna B., is the children's natural mother; their father, Antwan J. (referred to as the "father"), is not a party to the appeal. On July 24, 2006, appellee, Lucas County Children Services ("LCCS"), re-filed a complaint in dependency and neglect; the original case could not be disposed of within the statutorily required time limitation. The complaint alleged that appellant and the father have a long history of domestic violence which had occurred with the children present. Specifically, the complaint alleged that there had been two altercations in the past where, in contravention of the safety plan, the parties were together with the children present. The complaint also alleged that the parties have a history of substance abuse and that appellant lacked stable housing. At the shelter care hearing, emergency temporary custody of the children was awarded to LCCS.
 {¶ 3} At the September 21, 2006 adjudicatory hearing, the parties consented to a finding of neglect. Temporary custody remained with the paternal aunt. Case plan services offered to appellant included substance abuse treatment, domestic violence counseling, parenting classes, and help securing stable housing. It is undisputed that appellant substantially completed her case plan requirements. The father refused substance abuse treatment.
 {¶ 4} On November 2, 2006, the children were returned to appellant's care; LCCS was awarded protective supervision. The father was ordered to have no contact with the children in appellant's home; visitation was ordered to be supervised by an appropriate *Page 3 
relative or take place at LCCS. Appellant was not to be present when the father visited the children.
 {¶ 5} On November 14, 2006, LCCS filed a motion to change disposition and requested an emergency shelter care hearing. LCCS alleged that the father was living in appellant's home and having unsupervised contact with the children. LCCS further claimed that appellant hit Antwan J. when she learned that he told the caseworker about their living arrangements. At the shelter care hearing, the trial court found probable cause to award temporary custody to LCCS, with placement of the children with their paternal aunt.
 {¶ 6} The dispositional hearing was held on January 25, 2007, and the following evidence was presented. Shamika J., the children's paternal aunt, testified that she has had placement or custody of the children from June until October 2005, and from May until November 2006.
 {¶ 7} Shamika testified that the relationship between appellant and her brother is violent. Shamika stated the she has been the "go-between" or the "peace keeper" and that she does not want to "pick sides." Shamika testified that during the violent episodes her main concern was removing the children from the situation.
 {¶ 8} Shamika testified that on November 13, 2006, she was contacted by LCCS about taking the children; Shamika learned from appellant, that Antwan told the caseworker that his father was living in their home. Once Antwan and Shamika were alone, Antwan told her that he told the caseworker that his father makes his lunches in the *Page 4 
morning. According to Shamika, Antwan also stated that he told the caseworker the truth about his father but his mother gave him a "whooping" anyway. Shamika further testified that the day care worker saw the father with the children, after they were reunited with appellant, on more than one occasion and that he had dropped off items for Antwane. Shamika stated that she would accept legal custody of the children.
 {¶ 9} During cross-examination, Shamika testified that she last saw appellant and the father together about one month prior. Shamika testified that the father had a key to appellant's apartment.
 {¶ 10} Brynn Burr testified that she is employed by LCCS and that she is the family's caseworker. Burr acknowledged that appellant had substantially completed all the requested services. Regarding the father, Burr stated that he refused to start drug treatment through LCCS, but that he finally complied with treatment as a condition of probation.
 {¶ 11} Burr testified that following the children's return to appellant she heard, through her supervisor, that the father was back in the home. Burr testified that she called appellant to get permission to speak with the children at school and at day care; appellant consented. Burr testified that when she spoke with Antwan, he told her that his father picks him up from school; they then go to day care and pick up Antwane. According to Burr, Antwan told her that he and his sister share a room and that his mom and dad share a room. Antwan also stated that his father packs his lunch in the morning. *Page 5 
 {¶ 12} Burr testified that she spoke with individuals at Antwane's day care. They indicated that a man came in with Antwane and introduced himself as Antwane's father. A day care employee also stated that Antwan's father had come in on other occasions to bring Antwane her blanket.
 {¶ 13} During cross-examination, Burr admitted that she had not personally observed any of the things that Antwan had told her. Burr agreed that she had not seen appellant and the father together and that they denied being together.
 {¶ 14} Nehama Miller testified that she is employed at Harbor Behavioral Healthcare and was appellant's service coordinator for the Help Me Grow program. Miller testified that there initially was some confusion about the program; the program is a school readiness program, not a parenting program. Appellant was given the option to continue with the program and she chose to continue. Miller testified that she worked with the children from April to October 2006; all of the visits took place at LCCS. Miller testified that she stopped by appellant's apartment once to "see what it looked like." Miller testified that appellant did very well and was welcoming.
 {¶ 15} Appellant had two neighbors testify on her behalf. Jonathon Bishop testified that he lives across the hall from appellant's apartment. Bishop stated that he does not know the children's father and that he has never seen him before. Bishop stated that he did not see a man living in appellant's apartment. Bishop stressed that apartment management has a strict policy against residents who are not on the lease. Bishop added that their apartments are right near the office. *Page 6 
 {¶ 16} During cross-examination, Bishop acknowledged that he did not know what the father looked like. Bishop further stated that the apartment management has no policy prohibiting residents from having overnight guests.
 {¶ 17} Rose Santillian testified that she lives upstairs from appellant. Santillian testified that she and appellant are very good friends and that they see each other every day. Santillian testified that she has never seen the father and she would not recognize him. Santillian testified that she would know if there was a man living in appellant's apartment.
 {¶ 18} Olivia Barker testified that she is appellant's aunt. Barker testified that she has no knowledge of the father living with appellant. Barker stated that sometimes appellant can be a little "harsh" with the children but that she provides for her children.
 {¶ 19} Appellant testified that the last contact she had with the father was on Thanksgiving; the father and Shamika came to appellant's grandmother's house to get an apartment key from appellant to get items for the children. Appellant denied that the father was living in her home, making the children's lunches, and taking them to school. Regarding school, appellant testified that she only transported the children on Tuesday and Thursday of the week in question. Appellant stated that Shamika and her cousin transported the children on the remaining days. Appellant testified that she had no knowledge of the father dropping off Antwane's blanket. Appellant denied that the father has a key to her apartment. *Page 7 
 {¶ 20} Appellant was questioned regarding the incident where she allegedly spanked Antwan for telling the caseworker that his father was residing in the apartment. Appellant stated that she spanked Antwan because he ran out in the parking lot, not because of what he told the caseworker. Appellant stated that she completed all her case plan services, she has food and housing, and she would abide by the requirement that the father have no unsupervised visits.
 {¶ 21} LCCS parent educator, Janice Woodson, was the final witness to testify. Woodson testified that she began working with appellant in July 2006, midway through the 12 week course. Woodson stated that she had the opportunity to observe appellant with her children; Woodson stated that appellant's parenting skills were "okay" and that she was able to utilize what she had been taught. According to Woodson, appellant's home was clean and she had food. Finally, Woodson testified that appellant had not completed the parent child observation component of the parenting program but that it was not appellant's fault; appellant was at LCCS on three to four occasions where the caregiver did not bring the children.
 {¶ 22} The children's guardian ad litem filed her report and recommendations. The GAL report recommended that Shamika J. be awarded legal custody.
 {¶ 23} Thereafter, in a decision signed on January 29, 2007, the magistrate awarded legal custody of the children to Shamika J. On February 23, 2007, appellant filed objections to the magistrate's decision. On March 20, 2007, the trial court, after an independent review, adopted the magistrate's decision. This appeal followed. *Page 8 
 {¶ 24} Appellant now raises the following assignments of error for our review:
 {¶ 25} "I. The trial court erred in finding that the Lucas County Children Services Board had made a reasonable effort to reunify the minor children with appellant.
 {¶ 26} "II. The trial court erred in granting Lucas County Children Services Board's motion for legal custody to a relative as it was against the manifest weight of the evidence to grant it."
 {¶ 27} Appellant's assignments of error are related and will be jointly addressed. Appellant argues that the trial court erred in finding that LCCS made reasonable efforts to reunite appellant with her children during the course of the proceedings below and that the award of legal custody was against the manifest weight of the evidence.
 {¶ 28} In support of appellant's assignment of error she relies on R.C. 2151.414. R.C. 2151.414(B)(1) provides that "the court may grant permanent custody of a child to a movant if the court determines * * *, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody" and if any one of 16 enumerated factors apply. Because the trial court did not grant permanent custody of the children to LCCS or a private agency, R.C. 2151.414 does not apply in this case.
 {¶ 29} Pursuant to R.C. 2151.353(A)(3):
 {¶ 30} "(A) If a child is adjudicated an abused, neglected, or dependent child, the court may make any of the following orders of disposition:
 {¶ 31} "* * * *Page 9 
 {¶ 32} "(3) Award legal custody of the child to either parent or to any other person who, prior to the dispositional hearing, files a motion requesting legal custody of the child or is identified as a proposed legal custodian in a complaint or motion filed prior to the dispositional hearing by any party to the proceedings. * * *."
 {¶ 33} It is well established that natural parents have a fundamental liberty interest in the care, custody, and management of their children.In re Hockstok, 98 Ohio St.3d 238, 2002-Ohio-7208, ¶ 16. Nevertheless, where a child has been adjudicated neglected, R.C. 2151.353(A)(3) provides that the trial court may award legal custody of that child to a person other than the child's parents. In re Christopher M, 6th Dist. No. L-06-1063, 2007-Ohio-1040, ¶ 12; In re Sean T., 164 Ohio App.3d 218,2005-Ohio-5739, ¶ 25. In order to grant legal custody of a neglected child to a nonparent, a trial court must find, by a preponderance of the evidence, that legal custody is in the child's best interest. In reChristopher M, ¶ 12. On appeal, this court will not reverse an award of legal custody absent a showing of an abuse of discretion. Id. ¶ 13. An abuse of discretion is more than an error of law or judgment; the term connotes that the court's attitude was arbitrary, unreasonable or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 34} In the present case, appellant argues that the trial court abused its discretion by awarding legal custody to the children's parental aunt because she substantially complied with all of her case plan services. Appellant further contends that LCCS failed to provide any evidence, apart from hearsay, that appellant facilitated the unsupervised contact between the father and the children. *Page 10 
 {¶ 35} We note that it is undisputed that appellant substantially completed her case plan services. Thus, the issue is whether LCCS provided sufficient evidence demonstrating that reasonable efforts were made to reunite appellant and her children and that the award of legal custody to Shamika J. was in the children's best interests. Contrary to appellant's assertion regarding the admission of hearsay evidence, Juv.R. 34(B)(2) provides: "Except as provided in division (I) of this rule, the court may admit evidence that is material and relevant, including, but not limited to, hearsay, opinion, and documentary evidence[.]" Division (I) provides that "[t]he Rules of Evidence shall apply in hearings on motions for permanent custody." Accordingly, because this was not a hearing on a motion for permanent custody, the trial court did not err when it considered testimony from Shamika J. and Brynn Burr regarding statements made by the children and the day care provider.
 {¶ 36} LCCS presented testimony that the father, in contravention of the court order, was living in appellant's home, that the father was taking the children to school, and that the father was packing the children's lunches and dropping off items at school. LCCS further presented testimony that appellant "whooped" Antwan for telling the caseworker about the above facts. Appellant denied the occurrence of these incidents. It would appear that the case turns on the credibility of the witnesses. "The knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record. * * *. In this regard, the reviewing court in such proceedings should be guided by the presumption that the trial *Page 11 
court's findings were indeed correct. (Citations omitted.) Miller v.Miller (1988), 37 Ohio St.3d 71, 74.
 {¶ 37} Because we cannot say that the trial court abused its discretion when it found the testimony of Shamika J. and the caseworker to be credible, we find that the trial court's judgment awarding legal custody to Shamika J. was supported by a preponderance of the evidence and was not against the weight of the evidence. Appellant's first and second assignments of error are not well-taken.
 {¶ 38} On consideration whereof, we find that substantial justice was done the party complaining and the judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4. *Page 12 
Mark L. Pietrykowski, P.J., William J. Skow, J., Thomas J. Osowik, J., CONCUR. *Page 1