**In re B.M.S.; S.A.T., Appellant.**

[Cite as *In re B.M.S.*, 192 Ohio App.3d 394, 2011-Ohio-714.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 10AP–748.

Decided Feb. 17, 2011.

Tyack, Blackmore & Liston Co., L.P.A., Margaret L. Blackmore, and Siobhan R. Boyd, for appellee.

Abroms Law Offices and Hillard M. Abroms, for appellant.

FRENCH, Judge.

{¶ 1} Appellant, S.A.T., appeals the judgment of the Franklin County Court of Common Pleas, Probate Division, which denied his petition to adopt his stepsons, B.M.S. and J.C.S. For the following reasons, we affirm.

{¶ 2} B.M.S. and J.C.S. are the biological children of appellant's current wife, R.T., and appellee, M.S. Appellee and R.T. were once married, and they were divorced in the state of Oklahoma in March 2002. Pursuant to the decree of divorce, custody of the children was granted to R.T. Appellee was granted visitation privileges and ordered to pay child support. Following the divorce, appellee moved to Louisiana. In early 2003, appellee moved to Dallas, Texas. From March 2002 to February 2005, appellee met all his court-ordered child-support obligations. Until early 2005, he drove to Oklahoma twice per month to visit with his children.

{¶ 3} In early 2005, R.T. moved to Ohio with the children, and she married appellant. Appellee stopped making child-support payments.

{¶ 4} In April 2006, appellant filed his petition for adoption of B.M.S. and J.C.S. In it, he alleged that appellee had failed to support the children for the

preceding 12 months, and, as a result, appellee's consent to the adoption was not required. R.T. consented to the adoption.

{¶ 5} In June 2006, a court in Oklahoma granted R.T.'s motion to reduce to judgment appellee's unpaid child-support and medical-expense obligations. The court granted judgment in favor of R.T. and against appellee in the amount of $23,545.02, plus interest.

{¶ 6} In September 2006, a probate-court magistrate held a hearing on the issue whether appellee's consent was required in order for the adoption to go forward. The magistrate issued a decision, which concluded that appellant had met his burden of proving, by clear and convincing evidence, that appellee had failed, unjustifiably, to support his children during the preceding year. On objections from appellee, the probate court adopted the magistrate's decision and held that appellee's consent for the adoption was not required.

{¶ 7} Appellee appealed to this court, and we affirmed. See *In re Adoption of B.M.S.*, 10th Dist. No. 07AP–236, 2007-Ohio-5966, 2007 WL 3293369 ("*In re Adoption I*").

{¶ 8} Following this court's November 2007 decision in *In re Adoption I*, the probate-court magistrate held a hearing over a period of four days to determine whether, pursuant to R.C. 3107.161, adoption was in the best interest of B.M.S. and J.C.S. In a February 22, 2010 decision, the magistrate concluded that appellant "is suitably qualified to care for and rear" B.M.S. and J.C.S. and, based on the weight of the evidence and the credibility of the witnesses, that "the petition for adoption is in the best interest of the children for both their short term and long term stability." Accordingly, the magistrate concluded that appellant's petition for adoption should be granted.

{¶ 9} Appellee filed objections to the magistrate's decision. The probate court made virtually the same findings of fact as the magistrate, but ultimately concluded that while appellant "is suitably qualified to care for and rear" B.M.S. and J.C.S., "the petition for adoption is not in the best interest of the children for both their short term and long term stability." Accordingly, the probate court denied appellant's petition.

{¶ 10} Appellant appealed, and he raises the following assignments of error:

Error I: The judgment entry of the trial judge sustaining objections and denying [appellant's] petition for adoption of the minor children is contrary to law and public policy and [is] therefore an abuse of discretion.

Error II: The denial of [appellant's] petition for adoption of the minors was an abuse of discretion as [against] the manifest weight of the evidence.

{¶ 11} R.C. Chapter 3107 prescribes requirements and procedures for adoption in Ohio. R.C. 3107.14(C) allows a probate court to issue a final decree of adoption

at the conclusion of a hearing on an adoption petition, if the court finds (1) that the required consents have been obtained or excused and (2) that the adoption is in the best interest of the person sought to be adopted. Thus, in Ohio, an adoption is a two-step process, with a consent phase and a best-interest phase. *In re Adoption I* at ¶ 10, citing *In re Adoption of Jordan* (1991), 72 Ohio App.3d 638, 645, 595 N.E.2d 963.

{¶ 12} Here, as we noted, the probate court determined that appellee's consent was not required, and this court affirmed. On remand, then, the probate court proceeded to the best-interest phase. R.C. 3107.161(B) provides that when a court makes a determination in a contested adoption concerning the best interest of a child, the court must consider all relevant factors, which include, but are not limited to, all of the following:

(1) The least detrimental available alternative for safeguarding the child's growth and development;

(2) The age and health of the child at the time the best interest determination is made and, if applicable, at the time the child was removed from the home;

(3) The wishes of the child in any case in which the child's age and maturity makes this feasible;

(4) The duration of the separation of the child from a parent;

(5) Whether the child will be able to enter into a more stable and permanent family relationship, taking into account the conditions of the child's current placement, the likelihood of future placements, and the results of prior placements;

(6) The likelihood of safe reunification with a parent within a reasonable period of time;

(7) The importance of providing permanency, stability, and continuity of relationships for the child;

(8) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

(9) The child's adjustment to the child's current home, school, and community;

(10) The mental and physical health of all persons involved in the situation;

(11) Whether any person involved in the situation has been convicted of, pleaded guilty to, or accused of any criminal offense involving any act that resulted in a child being abused or neglected [or other specific crimes].

{¶ 13} A person who contests an adoption petition has the burden of providing to the court "material evidence needed to determine what is in the best interest of the child" and the burden of establishing "that the child's current placement is not the least detrimental available alternative." R.C. 3107.161(C). For these

purposes, "least detrimental available alternative" means "the alternative that would have the least long-term negative impact on the child." R.C. 3107.161(A).

{¶ 14} We will reverse a probate court's best-interest determination only if we find an abuse of the court's discretion. To find an abuse of discretion, we consider whether the court's decision is unreasonable, arbitrary, or unconscionable. *In re Adoption of Ridenour* (1991), 61 Ohio St.3d 319, 320, 574 N.E.2d 1055.

{¶ 15} With these standards in mind, we turn to appellant's assignments of error, which we address together. Within these assignments, appellant contends that the probate court "refused to accept" the boys' integration into the family unit, which includes their mother, stepfather, and stepsister, with whom they are bonded. He also argues that his influence on the boys "outweighs the insubstantial benefits that accrue to them through their continuing relationship with their biological father." As for the proceedings, he argues that the probate court "entered the objections hearing with a closed mind." Finally, he argues that the probate court made numerous errors in its factual findings and that the weight of the evidence supports the adoption. We disagree with appellant's characterization of the proceedings and the probate court's decision.

{¶ 16} First, the probate court made factual findings concerning the significant care and support that appellant gives to the children. The court found that appellant provides for both of them "through his income: shelter, clothing, food, schooling, and extracurricular activities." He acts as a coach and a mentor to the boys. The court even found that appellee does not dispute appellant's qualities as a parent, except for his lack of communication with appellee. Based on the evidence, the court found appellant to be a suitable parent for the boys, and there is nothing in the record to suggest that he is not.

{¶ 17} The court also made findings and conclusions concerning the boys' integration into their home and community. The court concluded, and the evidence supports, that the boys "have adjusted extremely well" to their home, school, and community environment. Thus, far from refusing to accept appellant's suitability, and the boys' integration into their loving and supportive home and community, the court acknowledged these positive factors expressly.

{¶ 18} Nevertheless, the court went on to consider the weight of these positive influences against the weight of appellee's possible influence and participation in the boys' lives. From the outset, the court acknowledged appellee's lack of financial support after the filing of the petition, with the exception of about $14,000 in payments, and his resulting noncompliance with the divorce decree's requirement that he pay child support. Appellant takes issue with the court's consideration of appellee's alleged reasons for not paying support, i.e.,

that he could not afford to both pay child support and visit the boys in Ohio and that R.T. had agreed to his choice of visitation over support. We conclude, however, that the court properly considered appellee's reasons for not paying support within the context of determining the best interest of the children and did not, by doing so, improperly revisit the issue of whether appellee's nonpayment was justifiable for purposes of determining whether his consent was needed. Appellee's willingness to support his children financially was relevant, for example, to the court's consideration of the relationship among the parties and of the need for permanency, stability, and continuity of those relationships, all proper factors under R.C. 3107.161.

{¶ 19} The court also acknowledged appellee's failure to visit the boys. The court found, however, that R.T. had "actively denied visitation" between appellee and the children after the filing of the adoption petition. There is competent, credible evidence to support the court's finding. R.T. was asked repeatedly whether she had allowed visitation since the filing of the petition, and she admitted that she had not.

{¶ 20} The court also considered appellee's attempts to contact the boys by telephone. Much attention was paid to appellee's contention that he had made nearly 700 phone calls over 29 months in his attempt to reach them and the evidence he offered to support that contention. While the court heard testimony about the boys' unwillingness to speak on the phone and the possibility that appellee's calls were excessive, the court also heard testimony that R.T. had made little or no attempt to respond to appellee's calls or otherwise to keep the boys in contact with their father. If nothing else, appellee demonstrated through this evidence that he had attempted to maintain communication with his children and that he was willing and able to make such efforts in the future, should the petition be denied.

{¶ 21} In the end, the court relied on, and accepted the conclusions of, the guardian ad litem ("GAL"). In his testimony and reports, the GAL acknowledged the very positive influence of appellant in the boys' lives. He also acknowledged the loving and supportive environments in which the children live and go to school. There is no question that the boys are thriving and well-adjusted under the care of appellant and R.T. The GAL also concluded, however, that the involvement of their biological father, appellee, would benefit the boys and, therefore, that the adoption was not the least detrimental alternative available for safeguarding their growth and development. To reach this conclusion, the GAL considered appellee's positive interaction with the boys when he had been able to spend time with them and his attempts to maintain contact with them.

{¶ 22} The GAL also considered the desires of the children. The older son, who was ten years old at the time of the hearing, had consistently expressed his desire to see his father. The younger son, who was eight years old then, was less consistent about his desires, sometimes saying that he did not want to see him, sometimes saying that he did, and sometimes saying that he was "50/50" on the issue. Neither boy had a clear understanding of the proceedings. Instead, they believed it was a process for changing their last name to that of their mother and stepfather. While appellant takes issue with consideration of the boys' desires, we note that R.C. 3107.161 requires the court to consider "[t]he wishes of the child in any case in which the child's age and maturity makes this feasible." R.C. 3107.161(B)(3). We agree with the GAL and the court that, at least, the court could consider the wishes of the ten-year-old son, who remembered his relationship with his father from an earlier period when they could spend more time together and was able to articulate his desires. And, while the eight-year-old son was inconsistent in his expression of his desires, he was able to communicate his general feelings about his father and his enjoyment of their visits together.

{¶ 23} Although appellant questions the propriety of the court's reliance on the GAL's testimony and reports, we conclude that the GAL's testimony and reports were competent, credible evidence on which the court could rely. This evidence, and also the testimony of appellee, his sister, and his friend, all support the court's conclusion that appellee had been, and could be again, a positive influence on the boys' growth and development.

{¶ 24} Finally, we address appellant's contention that the trial court was closed-minded and biased. In support, appellant notes that the court heard the oral arguments of both sides at the objections hearing, but then indicated immediately that it would sustain the objections and deny the petition. The court did, in fact, make its intentions known immediately. But the court also stated that it had reviewed the entire transcript of the magistrate's hearing prior to the objections hearing and also stated, at length, its reasons for denying the petition. Subsequently, the court issued a written decision that includes detailed findings of fact and conclusions of law. In it, the court identifies the statutory factors that must be considered. While the court did not thereafter list each factor separately and analyze each one individually, the court's written decision shows that the court understood the evidence and analyzed that evidence within the proper statutory framework. While the court's conclusion was contrary to the position of appellant, there is no indication that the court was closed-minded or biased against appellant.

{¶ 25} Considering the evidence as a whole, we conclude that the trial court's decision that the adoption was not in the best interest of the children was not contrary to the weight of the evidence. Appellee's evidence concerning his ability

to be a positive influence in the boys' lives supports the court's conclusion that adoption was not the least detrimental available alternative. Rather, adoption and the loss of their father's involvement in their lives would be more detrimental than appellee's presence and influence through regular visitation and support. The court properly considered the age, health, and wishes of each child. While the children and appellee had been separated for a long time, the separation was not entirely the fault of appellee, who had made many attempts to see them and demonstrated his willingness and ability to maintain contact with them, if allowed. There was evidence that with cooperation from all parties, the relationship between appellee and his children could be a consistent and positive one.

{¶ 26} To be sure, many factors—appellant's positive influence, a loving and supportive home and community, and the boys' adjustment to all aspects of their life with appellant and R.T.—favor adoption by appellant. Neither we, nor the trial court, may consider these positive factors in a vacuum, however. By weighing these factors against the negative effect of losing their relationship with their biological father, particularly when the relationship has been positive from the boys' perspective and where a ten-year-old child expresses his desire to maintain the relationship, the trial court did not abuse its discretion by concluding that the adoption was not in the best interest of the children.

{¶ 27} For all these reasons, we overrule appellant's first and second assignments of error. We affirm the judgment of the Court of Common Pleas, Probate Division.

Judgment affirmed.

BRYANT, P.J., and KLATT, J., concur.