[Cite as *In re L.C.C.*, 2018-Ohio-4617.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| In the Matter of: | : | |
| | | No. 18AP-167 |
| L.C.C., | : | (Prob. No. 580000) |
| (A.N.O., | : | (REGULAR CALENDAR) |
| Appellant). | : | |

D E C I S I O N

Rendered on November 15, 2018

**On brief:** *Anzelmo Law*, and *James A. Anzelmo*, for appellant. **Argued:** *James A. Anzelmo*.

**On brief:** *DeSanto & McNicols*, and *Debra J. DeSanto*, for appellee. **Argued:** *Debra J. DeSanto*.

**On brief:** *Douglas J. Althauser*, for amici curiae Family and Youth Law Center at Capital University Law School and National Coalition for A Civil Right to Counsel.

APPEAL from the Franklin County Court of Common Pleas, Probate Division

SADLER, J.

{¶ 1} Respondent-appellant, A.N.O., appeals from a judgment of the Franklin County Court of Common Pleas, Probate Division, granting the petition filed by petitioner-appellee, T.C., seeking the adoption of L.C.C., appellant's biological son. For the reasons that follow, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} On December 12, 2012, appellant gave birth to L.C.C. The identity of the biological father is unknown. On January 3, 2013, Franklin County Children Services ("FCCS") was informed that appellant had tested positive for oxycodone on seven occasions

during her pregnancy and twice for marijuana and that she continued to use illegal drugs while breastfeeding.

{¶ 3} On February 25, 2013, FCCS filed a neglect and dependency complaint, pursuant to R.C. 2151.03(A)(2) and 2151.04(C), in the Franklin County Juvenile Court. Due to appellant's indigence, counsel was appointed to represent appellant in the juvenile court proceedings. In April 2013, FCCS removed L.C.C. from appellant's care and placed him with appellant's mother. Three weeks later, on May 3, 2013, FCCS removed L.C.C. from appellant's mother and placed him with appellee and appellee's husband. Appellee is appellant's maternal aunt. The stated reason FCCS removed L.C.C. from appellant's mother was a "failure to thrive." (Feb. 9, 2017 Tr. at 8.)

{¶ 4} On May 9, 2013, the Franklin County Juvenile Court determined that L.C.C. was a "dependent minor pursuant to section 2151 of the Ohio Revised Code" and awarded temporary custody of L.C.C. to FCCS. (Oct. 5, 2017 Juvenile Court Decision and Entry.) L.C.C. was approximately four and one-half months old when appellee obtained custody. L.C.C. has remained in appellee's care since that time.

{¶ 5} In late 2013 or early 2014, appellant traveled to Florida to enter a drug treatment program. She returned briefly in February 2014 for a hearing in the juvenile court case. On October 7, 2014, the juvenile court issued an order, pursuant to R.C. 2151.42(B), awarding legal custody of L.C.C. to appellee and appellee's husband. Appellant did not object to the court's ruling, and she went back to Florida. Appellant has admitted that she did not complete the Florida drug treatment program and continued to use illegal drugs.

{¶ 6} In December 2015, a Franklin County Grand Jury indicted appellant for heroin possession, a felony of the third degree. On July 27, 2016, appellee filed her petition for adoption, pursuant to R.C. 3107.05, in the Franklin County Probate Court. Appellant received notice of the petition while at the Franklin County jail. On October 14, 2016, appellee filed an amended petition. Appellant filed her pro se objection to the amended petition on November 10, 2016. On receipt of appellant's objection, the probate court sent appellant a letter advising her to speak with an attorney regarding her parental rights.

{¶ 7} On February 9, 2017, a magistrate conducted a hearing, pursuant to R.C. 3107.07(A), to determine whether appellant's consent to the adoption was required.

Appellant attended the hearing via telephone from the Franklin County Sheriff's Office, without the benefit of legal counsel. On February 21, 2017, the magistrate issued a decision wherein the magistrate found, by clear and convincing evidence, that appellant failed without justifiable cause to provide more than de minimis maintenance and support to L.C.C. for a period of one year immediately preceding the filing of the adoption petition. Accordingly, the magistrate recommended the court conclude that appellant's consent to the adoption was not required and proceed to a determination whether granting the adoption petition would be in the best interest of L.C.C. Appellant did not file an objection to the magistrate's decision.

{¶ 8} On May 18, 2017, the magistrate held an evidentiary hearing to determine whether, pursuant to R.C. 3107.161, granting the adoption petition would be in the best interest of L.C.C. Appellant appeared at the hearing pro se. As a result of the hearing, the magistrate issued a decision on May 25, 2017 recommending the court deny the petition for adoption. The magistrate found appellant proved, by clear and convincing evidence, adoption by appellee was not in L.C.C.'s best interest.

{¶ 9} Appellee filed objections to the magistrate's decision accompanied by a transcript of the proceedings before the magistrate. Appellant filed a response and her own supplemental objections on August 15, 2017. On October 11, 2017, the court held a hearing on the objections. At the start of the proceeding, the trial court addressed appellant regarding her legal representation, whereon the following exchange took place:

> THE COURT: And I understand that you represented yourself in the underlying hearing with the magistrate?
>
> [APPELLANT]: Yes, sir.
>
> THE COURT: Have you made any attempts to try and find legal counsel – (INAUDIBLE)?
>
> [APPELLANT]: Yes.
>
> THE COURT: This is a big – this is a big decision. It's something that's a big – I'm sure probably one of the biggest decisions, if not the most, for your situation.
>
> [APPELLANT]: I know.
>
> THE COURT: Have you tried to seek legal counsel?

[APPELLANT]: I have. I've been to the legal association. I've called the bar association, OSU, Capital, and tried to get a court-appointed attorney, all of which I was denied.

THE COURT: Basically because if it's not a criminal proceeding, you'd be —

[APPELLANT]: Yeah.

THE COURT: If you're indigent, you could get the services of the public defender, but since it's a civil proceeding, they — and no one at Capital Law — did you say Capital Law?

[APPELLANT]: Capital. They don't have a course right now that is working in probate so they can't do anything to help me. Same with OSU and the legal association and the bar association.

(Oct. 11, 2017 Tr. at 3-4.)

{¶ 10} As a result of the hearing, the court continued the matter for 60 days to allow appellant additional time to obtain legal counsel and to prepare. Following an unsuccessful mediation, the court held an evidentiary hearing on February 6, 2018 to determine whether adoption was in the best interest of L.C.C. At the hearing, the court heard additional testimony from the parties and from the Guardian ad Litem ("GAL"), Stacey L. Beck, who testified by way of deposition.

{¶ 11} Prior to hearing testimony, the court made the following comments regarding appellant's pro se status:

I will say one thing. It's — I hate to see a situation where we have litigants without attorneys. It complicates things a little bit. So what I'm going to do is — is I'm going to — I'm going to afford — this is a best-interest hearing, and so as long as it's relevant, I'm going to afford her a pretty wide latitude. If it's something that she's — that's permissible for her to ask, you, as a good lawyer, are probably going to object if it's not phrased the right way. The fact that she doesn't have an attorney, I'll probably afford her a pretty wide latitude in being able to ask questions. I don't think that it's going to affect our proceedings and so just to move it along.

(Feb. 6, 2018 Tr. at 13-14.)

{¶ 12} On March 6, 2018, the trial court issued a decision sustaining appellee's objections to the magistrate's decision and granting the petition for adoption.  In making its findings, the trial court considered the evidence admitted at the hearing before the magistrate and the additional evidence submitted at the February 6, 2018 evidentiary hearing.  In reaching its conclusions, the trial court independently analyzed the relevant factors set forth in R.C. 3107.161(B) in making the best-interest determination.  The trial court concluded that appellee "has proven by clear and convincing evidence that the child's adoption to [appellee] would be in the child's best interests."  (Mar. 6, 2018 Decision at 22.)

{¶ 13} Appellant timely appealed to this court from the trial court's decision.

## II.  ASSIGNMENTS OF ERROR

{¶ 14} Appellant assigns the following as trial court error:

> [1.] [Appellant's] constitutional equal protection rights required that the trial court provide her with the assistance of counsel during the adoption proceedings in which her parental rights were terminated.
>
> [2.] [Appellant's] constitutional due process rights required that the trial court provide her with the assistance of counsel during the adoption proceedings in which her parental rights were terminated.
>
> [3.] The trial court committed structural error by denying [appellant] her constitutional right to counsel.
>
> [4.] The trial court committed plain error by finding that [appellant's] consent was not required in the proceedings for L.C.C.'s adoption.
>
> [5.] The trial court abused its discretion by concluding that it was in L.C.C.'s best interest for [appellee] to adopt him.

## III.  STANDARD OF REVIEW

{¶ 15} Appellate courts "generally review a trial court's adoption, denial or modification of a magistrate's decision for an abuse of discretion."  *Brunetto v. Curtis*, 10th Dist. No. 10AP-799, 2011-Ohio-1610, ¶ 10.  However, where the appeal from the trial court's action on a magistrate's decision presents only a question of law, the standard of review is de novo.  *Id.*

## IV.  LEGAL ANALYSIS

### A.  First Assignment of Error

{¶ 16}  In her first assignment of error, appellant argues the trial court violated her rights to equal protection of the law guaranteed by the Fourteenth Amendment to the U.S. Constitution and Article I, Section 2 of the Ohio Constitution in failing to appoint legal counsel to represent appellant in the adoption proceedings.  Appellee maintains that an indigent biological parent facing the loss of parental rights in a contested private adoption in the probate court is in the same position as an indigent biological parent facing the loss of parental rights in an abuse, neglect, and dependency case initiated by the state in juvenile court under R.C. 2151.353.  Appellant argues because R.C. 2151.353(C) requires appointment of legal counsel to indigent parents "pursuant to Chapter 120. of the Revised Code" in proceedings arising out of abuse, neglect, and dependency cases initiated by the state, the Equal Protection Clause requires appointment of legal counsel, at the state's expense, to indigent parents in private adoption proceedings.[1]  Appellant claims that in cases involving the fundamental right to parent a child brought pursuant to R.C. Chapter 3107, disparate treatment of similarly situated indigent parents violates the Equal Protection Clauses of the U.S. and Ohio Constitutions.

{¶ 17}  Ordinarily, this court would review a properly preserved assignment of error challenging a statutory law on equal protection grounds under the de novo standard of review.  *In re D.C.*, 10th Dist. No. 16AP-124, 2017-Ohio-114, ¶ 14.  Before undertaking an equal protection analysis of Ohio's adoption laws in this case, however, we must examine the record to determine whether appellant preserved the constitutional claim she now raises on appeal.  For the foregoing reasons, we find that appellant waived the equal protection argument she now raises in her first assignment of error by failing to raise it in the trial court.

{¶ 18}  This court has repeatedly stated that " '[a] constitutional issue not raised at trial "need not be heard for the first time on appeal." ' "  *State v. Harris*, 10th Dist. No. 15AP-683, 2016-Ohio-3424, ¶ 74, quoting *State v. Douglas*, 10th Dist. No. 09AP-111, 2009-Ohio-6659, ¶ 61, quoting *State v. Awan*, 22 Ohio St.3d 120 (1986), syllabus.  "[T]he

---

[1] R.C. 120.01 provides in relevant part: "There is hereby created the Ohio public defender commission to provide, supervise, and coordinate legal representation at state expense for indigent and other persons."

question of the constitutionality of a statute must generally be raised at the first opportunity and, in a criminal prosecution, this means in the trial court." *Awan* at 122. "Even '[c]onstitutional rights may be lost as finally as any others by a failure to assert them at the proper time.' " *State v. Collins*, 10th Dist. No. 17AP-703, 2018-Ohio-2606, ¶ 7, quoting *State v. Childs*, 14 Ohio St.2d 56, 62 (1968). "The longstanding waiver rule is 'strict.' " *Collins* at ¶ 7, quoting *State v. Long*, 53 Ohio St.2d 91, 96 (1978).

{¶ 19} In the case of *In re J.R.F.*, 4th Dist. No. 16CA701, 2017-Ohio-8125, appellant, the biological father of J.R.F, objected to a petition for adoption filed by appellee in the Vinton County Common Pleas Court, Probate Division.[2] Appellant moved the probate court to appoint counsel to represent him at the state's expense arguing that he "need[s] an attorney to help me present defenses and to protect my Constitutional right to have an on-going parent/child relationship with my daughter * * *." *Id.* at ¶ 3. The probate court denied the motion and appellant appealed.

{¶ 20} On appeal, appellant argued the Equal Protection Clauses of the Ohio and U.S. Constitutions require the appointment of legal counsel to indigent parents in private adoption proceedings. A threshold issue for the Court of Appeals was the appropriate standard of review. In concluding the plain error standard applied, a majority of the court reasoned that "because appellant did not specifically request the trial court to consider the equal-protection implications of his request for appointed counsel, we must review appellant's equal-protection argument for plain error." *Id.* at ¶ 15.

{¶ 21} We note that the dissenting judge in *In re J.R.F.* argued the plain error standard should not apply because the equal protection argument specifically raised by appellant on appeal was implicit in the generalized constitutional claim formally made by appellant in his motion for appointment of counsel. *Id.* at ¶ 44-45, citing *In re Adoption of P.L.H.*, 151 Ohio St.3d 554, 2017-Ohio-5824, ¶ 22. The dissent concluded the equal protection argument was preserved by appellant's motion. *In re J.R.F.* at ¶ 44-45.

{¶ 22} In our view, this record presents a more compelling case for waiver than *In re J.R.F.* Our review of the transcripts of all proceedings before the magistrate and the trial court convinces us that appellant waived the equal protection argument raised in her first

---

[2] *In re J.M.P.*, 4th Dist. No. 16CA702, 2017-Ohio-8126, *discretionary appeal not allowed*, 151 Ohio St.3d 1515, 2018-Ohio-365, is the companion case arising under the same facts but involving the child's stepfather.

assignment of error. Though appellant informed the trial court of her indigence and her prior unsuccessful efforts to retain legal counsel to represent her in this matter, the record does not show that appellant ever requested the trial court to appoint counsel, by motion or otherwise.[3] Appellant never argued that appointment of counsel was required by the Equal Protection Clause of the Ohio Constitution or the U.S. Constitution. Nor did appellant ever contend that the appointment of counsel was necessary to protect her constitutional rights in general. Even under the more forgiving approach to waiver adopted by the dissent in *In re J.R.F.*, the record in this case clearly establishes that appellant failed to preserve her equal protection argument in the trial court and waived the argument for purposes of appeal. Nevertheless, where waiver is clear, appellate courts reserve the right to consider constitutional challenges to the application of statutes in specific cases of plain error or where the rights and interests involved may warrant it. *In re M.D.*, 38 Ohio St.3d 149 (1988). *See also Risner v. Ohio Dept. of Natural Resources,* 144 Ohio St.3d 278, 2015-Ohio-3731, ¶ 27 (a reviewing court has discretion to consider forfeited constitutional challenges). Accordingly, this court will review appellant's first assignment of error under the plain error standard.

{¶ 23} To invoke the plain error doctrine, the party claiming error must establish: (1) that an error, i.e., a deviation from a legal rule, occurred; (2) that the error was an "obvious" defect in the trial proceedings; and (3) that this obvious error affected substantial rights, i.e., the error must have affected the outcome of the trial. *State v. Morgan*, 153 Ohio St.3d 196, 2017-Ohio-7565, ¶ 40. In appeals of civil cases, the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error seriously affects the basic fairness, integrity, or public reputation of the judicial process itself. *Goldfuss v. Davidson*, 79 Ohio St.3d 116 (1997), syllabus. "An appellate court 'must proceed with the utmost caution' in applying the doctrine of plain error in a civil case." *Risner* at ¶ 27, quoting *Goldfuss* at 121. "Plain error should be strictly limited 'to the *extremely rare* case involving *exceptional* circumstances when the error, left unobjected to at the trial court, rises to the level of challenging the legitimacy of the underlying judicial process itself.' " (Emphasis sic.) *Risner* at ¶ 27, quoting

---

[3] Though appellant stated at the October 11, 2017 hearing that she "tried to get a court-appointed attorney," the record does not show that appellant put any such request directly to the trial court, either orally or in writing. (Oct. 11, 2017 Tr. at 4.)

*Goldfuss* at 122. The burden of demonstrating plain error rests with the appellant. *Risner* at ¶ 27. "For an error to be 'plain' or 'obvious,' the error must be 'plain under current law' 'at the time of appellate consideration.' " *In re J.R.F.* at ¶ 8, quoting *Johnson v. United States*, 520 U.S. 461, 467, 468 (1997); *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002); *State v. G.C.*, 10th Dist. No. 15AP-536, 2016-Ohio-717, ¶ 14. For the following reasons, we find the alleged equal protection violation in this case is neither plain nor obvious.

{¶ 24} The Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution states that no state shall "deny to any person within its jurisdiction the equal protection of the laws." The Equal Protection Clause in Article I, Section 2 of the Ohio Constitution provides "[a]ll political power is inherent in the people. Government is instituted for their equal protection and benefit." "These two equal-protection provisions are functionally equivalent and require the same analysis." *State v. Aalim*, 150 Ohio St.3d 489, 2017-Ohio-2956, ¶ 29, citing *Eppley v. Tri-Valley Local School Dist. Bd. of Edn.*, 122 Ohio St.3d 56, 2009-Ohio-1970, ¶ 11. "Simply stated, the Equal Protection Clauses require that individuals be treated in a manner similar to others in like circumstances." *McCrone v. Bank One Corp.*, 107 Ohio St.3d 272, 2005-Ohio-6505, ¶ 6.

{¶ 25} In considering whether statutory law violates equal protection, courts apply different levels of scrutiny to different types of classifications. *State v. Thompson*, 95 Ohio St.3d 264, 2002-Ohio-2124, ¶ 13. If a statutory scheme draws a class distinction that involves either a suspect class or a fundamental right, then strict scrutiny applies. *Id.* In this regard, the Supreme Court of Ohio has stated that "[t]he right to parent one's children is a fundamental right." *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, ¶ 28; *Harrold v. Collier*, 107 Ohio St.3d 44, 2005-Ohio-5334, ¶ 39. Because R.C. 3107.15(A) provides that a final decree of adoption issued by an Ohio court has the effect of terminating all parental rights of biological parents and creating parental rights in adoptive parents, we find the statute draws a class distinction that involves a fundamental right.[4]

{¶ 26} Inasmuch as the statutory scheme at issue in this case creates a distinction that involves a fundamental right, it will be upheld under the Equal Protection Clause if it

---

[4] Conversely, the October 7, 2014 juvenile court judgment granting permanent custody of L.C.C. to appellant, pursuant to R.C. 2151.42(A), did not have the effect of terminating all appellant's residual parental rights, privileges, and responsibilities. *In re J.R.P.*, 7th Dist. No. 17 MA 0169, 2018-Ohio-3938, ¶ 58; *In re Sean T.*, 164 Ohio App.3d 218, 2005-Ohio-5739, ¶ 23-24 (6th Dist.).

furthers a compelling state interest and is narrowly drawn to serve only that interest. *In re J.R.F.* at ¶ 18, citing *Thompson* at ¶ 13. This standard of review places a heavy burden on the government to establish there is a compelling state interest for the statutory distinction and that the statutory scheme has been narrowly drawn to serve only that interest. *In re J.R.F.* at ¶ 18, quoting *In re Judicial Campaign Complaint Against O'Toole*, 141 Ohio St.3d 355, 2014-Ohio-4046, ¶ 20; *In re J.M.P.* at ¶ 18, quoting *In re O'Toole* at ¶ 20.[5]

{¶ 27} In both *In re J.R.F* and *In re J.M.P.*, the Fourth District Court of Appeals disposed of the equal protection argument by way of the plain error standard as follows:

> [W]e are unable to conclude that the trial court plainly erred by failing to determine that denying appellant appointed counsel in this adoption proceeding deprives appellant of the equal protection of the law. While we assume, arguendo, that the strict scrutiny standard applies, we do not find it plain or obvious that denying an indigent parent appointed counsel in an adoption proceeding deprives the parent of the equal protection of the law. Appellant has not cited any decisions from this court, the Ohio Supreme Court, or the United States Supreme Court holding that the different treatment among indigent parents in private adoption proceedings and in state-initiated parental rights termination proceedings violates equal protection principles. Any error that the trial court might have made, therefore, is not a plain or obvious error under current law.

*In re J.R.F.* at ¶ 19; *In re J.M.P.* at ¶ 19.

{¶ 28} The status of Ohio and federal law has not changed since the Fourth District issued *In re J.R.F.* and *In re J.M.P.* Neither appellant herein, nor amici curiae, have cited any decisions from the Supreme Court of Ohio, the United States Supreme Court, the Tenth District Court of Appeals, or any other court of appeals in this state holding that Ohio's adoption laws violate equal protection because they treat similarly situated parents in private adoption proceedings differently than parents in state-initiated child custody proceedings with respect to the right to court-appointed counsel.[6]

---

[5] R.C. 2721.12 provides for notice to the Ohio Attorney General of proceedings involving constitutional challenges to state laws but only when the action originates as a declaratory judgment action. *In re J.R.F.* at fn. 4; *In re J.M.P.* at fn. 4.

[6] The Family and Youth Law Center at Capital University Law School and the National Coalition for A Civil Right to Counsel filed an amici brief in this case.

{¶ 29} Though appellant and amici curiae have cited several cases from other states that have held equal protection requires the appointment of counsel to indigent parents in private adoption cases, appellant acknowledges those cases are not controlling in this jurisdiction. We disagree with the assertion in the amici brief that "there is a national judicial consensus that it is a violation of equal protection," as the amici brief cites authority from only six different state courts. (Emphasis omitted.) (Amici Brief at 9.) Moreover, our review of the cited decisions reveals only two of those decisions arose under circumstances where the equal protection argument was clearly waived in the trial court. *See In re Adoption of L.T.M.*, 214 Ill.2d 60, 75 (2005); *In the Matter of the Adoption of A.W.S.*, 2014 MT 322 (2014). In each of the other cited cases, appellant specifically requested the appointment of counsel in the trial court and/or briefed and argued the equal protection argument in the trial court. *See, e.g., Adoption of Meaghan*, 461 Mass. 1006 (2012) (Committee for Public Counsel Services permitted to intervene to seek ruling whether father and child were entitled to appointed counsel in cases initiated by private parties involving termination of parental rights); *In re S.A.J.B.*, 679 N.W.2d 645, 650-51 (Iowa 2004) (Iowa legal aid attorney entered a limited appearance on behalf of indigent mother for the purpose of arguing that equal protection and due process required the district court to appoint legal counsel for mother, at the state's expense, in a private adoption proceeding); *In re Adoption of K.A.S.*, 499 N.W.2d 558 (N.D.1993) (petitioner submitted a brief opposing indigent father's request for court-appointed counsel arguing the state had a compelling interest in conserving the fiscal resources that would be expended if indigent parents are afforded court-appointed counsel in stepparent adoption proceedings); *Zockert v. Fanning*, 310 Ore. 514, 516 (1990) ("At the show cause hearing [analogous to Ohio's consent hearing] the trial court declined to honor repeated requests by father for an appointed lawyer and for a continuance to obtain counsel.").

{¶ 30} "A regularly enacted statute of Ohio is presumed to be constitutional and is therefore entitled to the benefit of every presumption in favor of its constitutionality." *State ex rel. O'Brien v. Heimlich*, 10th Dist. No. 08AP-521, 2009-Ohio-1550, ¶ 24, quoting *State ex rel. Dickman v. Defenbacher*, 164 Ohio St. 142, 147 (1955). Because we have found that any alleged violation of appellant's right to equal protection was not plain and obvious under the current state of Ohio or federal law, appellant cannot satisfy the plain error

standard.  Accordingly, we hold the trial court did not plainly err in the manner suggested by appellant's first assignment of error.[7]  Appellant's first assignment of error is overruled.

### B.  Second Assignment of Error

{¶ 31}  In her second assignment of error, appellant argues the trial court violated her rights to procedural due process under the Ohio and U.S. Constitutions by hearing and determining the petition for adoption without appointing legal counsel to represent her.  As set forth in connection with appellant's first assignment of error, appellant failed to raise the due process argument in the trial court and has waived all but plain error for purposes of appeal.

{¶ 32}  The Due Process Clause contained in the Fourteenth Amendment to the U.S. Constitution states no state shall "deprive any person of life, liberty, or property, without due process of law."  The Due Course of Law Clause in Article I, Section 16 of the Ohio Constitution provides "[a]ll courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay."  "The two clauses provide equivalent due process protections." *In re J.R.F.* at ¶ 22; *In re J.M.P.* at ¶ 22, citing *Aalim* at ¶ 15; *State v. Hand*, 149 Ohio St.3d 94, 2016-Ohio-5504, ¶ 11; *Direct Plumbing Supply Co. v. Dayton*, 138 Ohio St. 540, 544-45 (1941).[8]  The United States Supreme Court has stated that courts generally recognize "an indigent's right to appointed counsel * * * only where the litigant may lose his physical liberty if he loses the litigation."  *Lassiter v. Dept. of Social Servs.*, 452 U.S. 18, 25 (1981).

{¶ 33}  In *Angus v. Angus*, 10th Dist. No. 14AP-22, 2014-Ohio-4225, this court previously considered and rejected a procedural due process argument similar to the one raised by appellant's second assignment of error.[9]  In *Angus*, appellant, Larry Angus, Jr., appealed from two orders of the Franklin County Court of Common Pleas, Division of Domestic Relations.  The first order granted appellee's complaint seeking a divorce from

---

[7] For purposes of this appeal only, we assume, without deciding, that a private adoption proceeding in probate court constitutes state action.

[8] Appellant cites this court's per curiam decision in *In re W.W.E.*, 10th Dist. No. 15AP-167, 2016-Ohio-4552, for the proposition that the Ohio Constitution provides a broader due process right to court-appointed counsel than does federal law.  However, because *In re W.W.E.* involved the waiver of a parent's right to counsel in a state-initiated child custody proceeding, the case does not support appellant's argument in this case.

[9] Connor, J., concurring in part and dissenting in part.

appellant and the second order disestablished appellant as the father of one of appellee's children, Alexis, who was born in 2007, three years prior to the marriage. Appellant was not represented by legal counsel at any of the proceedings that resulted in the two orders.

{¶ 34} In his pro se appeal to this court, appellant, in *Angus*, argued that "termination of his parental rights and vesting of those rights in [the biological father] constituted a loss of his fundamental right to parentage that entitled him to heightened due process and effective representation by legal counsel throughout the course of proceedings." *Id.* at ¶ 16. The evidence produced at trial established that appellant, believing that he was the biological father of Alexis, filed an R.C. 3111.25 affidavit indicating he was the father. The evidence also showed that appellee, mother, had previously declared appellant as the father on the birth certificate and that "[appellant] carried the legal status of father for Alexis from her birth through the recent disestablishment of paternity." *Id.* at ¶ 17.

{¶ 35} On appeal, the majority decision recognized that, pursuant to R.C. 3111.25, appellant's acknowledgement of paternity had become final 60 days after it was entered into the birth registry. *Id.* at ¶ 17. The majority also recognized that "parents have a constitutionally protected liberty interest in the care, custody, and management of their children." *Id.* at ¶ 18, citing *Troxel v. Granville*, 530 U.S. 57, 66 (2000); *Santosky v. Kramer*, 455 U.S. 745, 753 (1982); *In re Murray*, 52 Ohio St.3d 155, 157 (1990). Finally, the majority decision acknowledged that Ohio's statutes governing juvenile and domestic court proceedings do provide indigent parents a right to appointed counsel for proceedings that will result in a termination of parental rights but only when the state is the initiating and primary actor in a proceeding. *Angus* at ¶ 19. This court, nevertheless, rejected appellant's due process claim "[b]ecause the state was not the initiating party in the deprivation of parental rights, and we find no statutory or constitutional right to counsel in the proceedings as presented in this case." *Id.* at ¶ 21.

{¶ 36} In *Angus,* the majority relied on *In re Adoption of M.C.*, 4th Dist. No. 11CA5, 2011-Ohio-6527, wherein the Fourth District Court of Appeals held the child's biological father had not shown that the Due Process Clause requires a probate court to appoint counsel to represent him in a private adoption proceeding initiated by the child's stepfather. In so holding, the Fourth District noted "[n]either the Supreme Court of Ohio nor this Court

has addressed the issue of whether an indigent parent contesting an adoption petition filed by a private party has a procedural due process based right to appointed counsel." *Id.* at ¶ 8.

{¶ 37} Appellant relies on *Lassiter*, in support of her due process argument. In *Lassiter*, a county social services department filed a petition to terminate a mother's parental rights. *Id.* at 20-21. The mother claimed she was indigent and entitled to appointed counsel under the Fourteenth Amendment Due Process Clause. *Id.* at 24. The state court granted respondent department's motion to terminate petitioner mother's parental rights. The Court of Appeals of North Carolina decided that appointment of counsel for indigent parents was not constitutionally required in proceedings to terminate parental rights. On writ of certiorari, the mother appealed to the United States Supreme Court.

{¶ 38} The United States Supreme Court held that due process did not require the state to appoint counsel to represent the mother in the proceeding to terminate her parental rights. *Id.* at 27. In so holding, the court instructed that trial courts must evaluate the three factors identified in *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976), to determine whether appointment of counsel may be required under the facts and circumstances of a particular case. *Lassiter* at 27. Those include the private interests at stake, the government's interest, and the risk that the procedures used will lead to erroneous decisions. *Id.* The court went on to state that once the trial court evaluates the *Eldridge* factors, it then must balance those factors "against the presumption that there is a right to appointed counsel only where the indigent, if he is unsuccessful, may lose his personal freedom." *Lassiter* at 27.

{¶ 39} Here, appellant did not seek court-appointed counsel in the trial court and she did not raise the due process argument she now raises in her second assignment of error. Consequently, the record does not contain any argument or evidence regarding the *Eldridge* factors. The majority decision from this court in *Angus* recognized no due process right to appointed counsel in cases where parental rights are at risk in an action initiated by a private party. Other courts in Ohio that have addressed the question whether appointment of counsel to indigent parents is required in private adoption proceedings have also concluded that no such right exists. *See, e.g., In re J.R.F.* at ¶ 42; *In re J.M.P.* at ¶ 42; *In re Adoption of I.M.M.,* 5th Dist. No. 16 COA 018, 2016-Ohio-5891, ¶ 17; *In re*

*Adoption of Drake*, 12th Dist. No. CA2002-08-067, 2003-Ohio-510. *See also In re Adoption of J.L.M.-L.*, 5th Dist. No. CT2016-0030, 2017-Ohio-61, ¶ 13, *appeal not allowed*, 148 Ohio St.3d 1446, 2017-Ohio-1427 ("[W]e decline to recognize on appeal an ineffective assistance claim by a biological parent opposing a private adoption petition.").

{¶ 40} The Fourth District Court of Appeals in both *In re J.R.F.* and *In re J.M.P.* concluded that applying the *Eldridge* factors in those cases did not obviously lead to a conclusion that due process requires appellant to have appointed counsel in this adoption proceeding. *In re J.R.F.* at ¶ 39; *In re J.M.P.* at ¶ 39. Here, neither appellant's merit brief nor her reply brief provide much in the way of analysis with regard to the *Eldridge* factors other than the assertion that appellant's private interest in retaining the parent-child relationship is paramount.

{¶ 41} Our review of the record reveals that this particular adoption case did not involve complex legal issues or significant factual disputes. The only testimony admitted was that of the parties and the GAL, who did not offer an opinion regarding the merit of the petition for adoption. No expert medical or psychiatric testimony was admitted. Thus, it is not clear that this adoption proceeding carried a high risk of error due to the fact that appellant was unrepresented. The transcript of the best-interest hearing before the magistrate reveals that appellant relied on her own testimony in support of her contention that the adoption was not currently in L.C.C.'s best interest and that she could provide L.C.C. with a safe and secure home environment at some point in the future. Appellant was able to convince the magistrate of the merits of her best-interest argument. On this record, we cannot say the *Eldridge* factors obviously overcome the presumption that there is a right to appointed counsel only where the indigent, if unsuccessful, may lose personal freedom. *Lassiter* at 27.

{¶ 42} " '[D]ue process' has never been, and perhaps can never be, precisely defined." *Id.* at 24. Instead, due process is "a flexible concept that varies depending on the importance attached to the interest at stake and the particular circumstances under which the deprivation may occur." *Aalim* at ¶ 22, citing *Walters v. Natl. Assn. of Radiation Survivors*, 473 U.S. 305, 320 (1985). "The fundamental requirement[s] of due process [are notice and] the opportunity to be heard 'at a meaningful time and in a meaningful manner.' " *Eldridge* at 333, quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965). The

record in this case shows both the magistrate and the trial court gave appellant every opportunity to obtain counsel to represent her in this matter, including granting continuances. The record also shows both the magistrate and the trial court made every effort, short of providing legal advice, to afford guidance to appellant in the course of these proceedings. The Supreme Court of Ohio has previously stated that the procedures currently in place under Ohio law adequately protect a biological parent's constitutionally protected rights. *In re Adoption of Zschach*, 75 Ohio St.3d 648, 653 (1996), citing R.C. 3107.06(F)(1) through (3) and 3107.07(B). In this case, we cannot say, based on the current state of Ohio and federal law, the trial court plainly and obviously deprived appellant of a constitutional due process right to appointed counsel in this private adoption proceeding. Accordingly, we overrule appellant's second assignment of error.

### C. Third Assignment of Error

{¶ 43} In appellant's third assignment of error, appellant argues the trial court committed structural error by violating appellant's constitutional right to counsel. We disagree.

{¶ 44} "Structural errors" are a category of fundamental constitutional errors that "are so intrinsically harmful as to require automatic reversal * * * without regard to their effect on the outcome." *Neder v. United States*, 527 U.S. 1, 7 (1999). A structural error is a " 'defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself,' " and thus it is "so serious as to defy harmless-error analysis." *Johnson* at 468, quoting *Arizona v. Fulminante*, 499 U.S. 279, 310 (1991). Structural errors are found "only in a very limited class of cases." *Johnson* at 468. Examples of structural error include the following: biased trial judge, *Tumey v. Ohio*, 273 U.S. 510 (1927); racial discrimination in the selection of a grand jury, *Vasquez v. Hillery*, 474 U.S. 254 (1986); the denial of self-representation at trial, *McKaskle v. Wiggins*, 465 U.S. 168 (1984); the denial of a public trial, *Waller v. Georgia*, 467 U.S. 39 (1984); and a jury instruction that defined reasonable doubt as grave uncertainty, *Sullivan v. Louisiana*, 508 U.S. 275 (1993), citing *Cage v. Louisiana*, 498 U.S. 39, 40-41 (1990).

{¶ 45} In *State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, the Supreme Court of Ohio explained that "[a]lthough all structural errors are by nature constitutional errors, not all constitutional errors are structural." *Id.* at ¶ 18, citing *Chapman v. California*, 386

U.S. 18, 22-23 (1967). As set forth in our discussion of appellant's first and second assignments of error, the trial court did not plainly and obviously violate appellant's constitutional right to counsel in these proceedings. Appellant has not cited any authority holding that the alleged failure to appoint counsel to a parent in a private adoption case is within the "very limited class of cases" in which a structural error occurred. *Johnson* at 468. Though the United States Supreme Court in *Gideon v. Wainwright*, 372 U.S. 335 (1963), recognized that structural error occurs when an indigent defendant is completely denied legal counsel in a criminal case, no court has recognized structural error arising out of the alleged denial of counsel in a civil action. We decline to do so in this case.

{¶ 46} Appellant's third assignment of error is overruled.

### D.  Fourth Assignment of Error

{¶ 47} In appellant's fourth assignment of error, appellant argues that the trial court committed plain error by finding appellant's consent was not required in the proceedings for L.C.C.'s adoption. We disagree.

{¶ 48} Pursuant to R.C. 3107.06(A), a petition to adopt a minor may be granted only if written consent to the adoption has been executed by the mother of the minor unless consent is not required under R.C. 3107.07. Under R.C. 3107.07, "[c]onsent to adoption" is not required of any of the following:

> (A) A parent of a minor, when it is alleged in the adoption petition and the court, after proper service of notice and hearing, finds by clear and convincing evidence that the parent has failed without justifiable cause to provide more than de minimis contact with the minor or to provide for the maintenance and support of the minor as required by law or judicial decree for a period of at least one year immediately preceding either the filing of the adoption petition or the placement of the minor in the home of the petitioner.

{¶ 49} The Supreme Court of Ohio has held, "[p]ursuant to R.C. 3107.07(A), the petitioner for adoption has the burden of proving, by clear and convincing evidence, both (1) that the natural parent has failed to support the child for the requisite one-year period, and (2) that this failure was without justifiable cause." *In re Adoption of Bovett*, 33 Ohio St.3d 102 (1987), paragraph one of the syllabus, following *In re Adoption of Masa*, 23 Ohio St.3d 163 (1986), paragraph one of the syllabus.

{¶ 50} The magistrate found appellee produced clear and convincing evidence that appellant failed without justifiable cause to provide more than de minimis maintenance and support of the minor, L.C.C., for a period of one year immediately preceding the filing of the adoption. Appellant did not file objections to the magistrate's decision regarding consent. Civ.R. 53(D)(3)(b)(iv) states "[e]xcept for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion * * * unless the party has objected to that finding or conclusion as required by Civ.R. 53(D)(3)(b)." Accordingly, we are limited to plain error review in this appeal. *PHH Mtge. Corp. v. Santiago*, 10th Dist. No. 11AP-562, 2012-Ohio-942, ¶ 8, citing *In re G.S.*, 10th Dist. No. 10AP-734, 2011-Ohio-2487, ¶ 6; *Nyamusevya v. Nkurunziza*, 10th Dist. No. 11AP-137, 2011-Ohio-5287, ¶ 9.

{¶ 51} We note appellant's fourth assignment of error does not challenge the magistrate's findings regarding appellant's lack of financial support. Appellant concedes she did not provide more than de minimis support and maintenance to L.C.C. in the year immediately prior to the date appellee filed her petition for adoption. Rather, appellant argues her failure to provide support was excused by her admitted and well-documented struggles with drug addiction. Under Ohio law, however, drug addiction is not considered a "justifiable cause" for a parent's failure to provide maintenance and support to a minor child. *See, e.g., In re Adoption of K.N.W.*, 4th Dist. No. 15CA36, 2016-Ohio-5863, ¶ 36 (father's loss of employment and continued unemployment resulted from his voluntary decision to use illegal drugs and did not provide a justifiable cause for his failure to pay maintenance and support); *In re Adoption of Lassiter*, 101 Ohio App.3d 367, 378 (2d Dist.1995), *discretionary appeal not allowed*, 73 Ohio St.3d 1410 (1995) (drug addiction alone is not a justifiable cause for failure to provide support).

{¶ 52} Appellant relies on a recent case from the Supreme Court of Indiana to support her argument that drug addiction excuses nonsupport. In *In re E.B.F.*, 93 N.E.3d 759 (Ind.2018), the court held the granting of the stepmother's petition to adopt the child was improper under Ind.Code 31-19-9-1 and 31-19-9-8(a)(2)(A) because the mother's consent was necessary. *Id.* at 767. The court reasoned the mother's struggles with addiction, her willingness to give up custody, and her good-faith recovery efforts justified her failure to communicate with her child during that one-year period. The court noted

that both the father and stepmother's unwillingness to abide by the agreed-upon modification order permitting mother parenting time frustrated the mother's limited ability to communicate.

{¶ 53} Though the facts in *In re E.B.F.* are superficially similar to those presented herein, the legal issue in that case was whether the evidence supported a finding that the mother had abandoned the child by failing to significantly communicate with the child, without justifiable cause, in the six months immediately preceding the filing of the petition. The Supreme Court of Indiana held that the mother's drug addiction and good-faith recovery efforts combined with the petitioner's refusal to allow court-ordered visitation excused the mother's lack of contact during the relevant time period.

{¶ 54} Here, the trial court held that appellant's consent was not required because she had failed to provide *maintenance and support* to L.C.C. without justifiable cause. The decision in this case was not based on appellant's lack of contact with L.C.C. Accordingly, even if we considered *In re E.B.F.* as persuasive authority in this jurisdiction, the case is distinguishable.

{¶ 55} Based on the foregoing, we hold the trial court committed no error in adopting the magistrate's determination regarding the necessity of appellant's consent, let alone plain error. Appellant's fourth assignment of error is overruled.

### E.  Fifth Assignment of Error

{¶ 56} In appellant's fifth assignment of error, appellant alleges the trial court abused its discretion by concluding it was in L.C.C.'s best interest for appellee to adopt him. We disagree.

{¶ 57} The evidence admitted at the best-interest hearing before the magistrate included the testimony of appellee and appellant. Appellant admitted that she has a drug problem and that she is addicted to heroin, but she claims that she has been sober since her incarceration, a period of 14 and one-half months. Appellant acknowledged that she agreed the grant of temporary custody of L.C.C. to appellee in May 2013 was in L.C.C.'s best interest. She also claimed she was sober at that time but that she subsequently relapsed.

{¶ 58} Appellant testified that she last saw L.C.C. in December 2015 and that she was arrested on March 29, 2016 on charges of heroin possession, a third-degree felony. Appellant pleaded guilty to the charge and received a three-year sentence. Pursuant to her

plea agreement, appellant became eligible for a transfer to a community based correctional facility ("CBCF").

{¶ 59} At the time of the magistrate's hearing, appellant had been housed at a CBCF for 74 days where she received several forms of drug treatment and life counseling. Appellant testified that a CBCF typically lasts up to 180 days but that she could be eligible to enter the Amethyst program after completing as few as 100 days of a CBCF. Appellant stated that the Amethyst program is a two-to-five-year program where she can live independently on the Amethyst campus while receiving counseling. Appellant maintained that L.C.C. could live with her while she was in the program and that she could eventually move off campus. Appellant admitted that she will be required to serve the remaining 30 months of her prison term if she does not successfully complete the CBCF program and that she must also serve a term of community control. Appellant admitted that appellee "loves [L.C.C.] 100 percent" and that appellee "does provide a good home, a caring home." (May 18, 2017 Tr. at 28-29.)

{¶ 60} At the best-interest hearing before the magistrate, appellee testified she was 56 years old and in good health. She owns her own home in Hilliard, Ohio, and she owns a company involved with web site design and increasing the internet presence of her clients. According to appellee, following the death of her husband in 2015, she began receiving government assisted healthcare for L.C.C.[10] Appellee testified that L.C.C. has friends at day care and in the neighborhood. She testified that L.C.C. initially referred to her as "TT," then "TT mom," and now he just calls her "mom." (May 18, 2017 Tr. at 10.)

{¶ 61} Appellee testified she has a 20-year-old daughter, K., who stays with appellant when she is home from college. L.C.C. refers to K. as his sister. Appellee's other three adult children live on their own and do not have much contact with L.C.C. Appellee stated that she maintained an open door policy with regard to appellant's visitation with L.C.C. after she received temporary custody in May 2013. According to appellee, appellant visited with L.C.C. a total of 16 times between the time appellee obtained temporary custody of L.C.C. and his first birthday. Appellee testified that the visits took place at her home and that they were short, no more than two hours. According to appellee, she made arrangements for appellant to enter the Amethyst drug treatment program in 2013 and that

---

[10] Appellee's husband died on April 12, 2015.

she changed her work schedule so she could drive appellant to her required appointments. Appellee stated that appellant failed to follow through with the program requirements. Appellee testified that appellant decided, over her objection, to seek drug treatment in Florida rather than Columbus.

{¶ 62} According to appellee, appellant returned to Columbus in February 2014 and that she visited with L.C.C. on six occasions before returning to Florida. Appellee stated that she heard nothing from appellant from July to October 2014. Though appellant was back in Columbus in 2015, appellee testified that appellant saw L.C.C. just once in April. Appellee did not hear from appellant again until December 2015. According to appellee, appellant did not see L.C.C. at all in 2016, and she estimated that appellant visited L.C.C. only 20 or 25 times in four years.

{¶ 63} At the hearing before the trial court on appellee's objections, the trial court elected to hear additional evidence from the parties. Appellee provided essentially the same testimony she had given at the prior hearing. Appellee also told the trial court the reason she filed for adoption:

> Because at this point he's – this is his life. This is what he's doing. His mom was in jail. She's struggling with drug – with drug addiction. He doesn't know any of that. He has – this is his life. This is his family. This is all he knows, and there was nothing – no reason to think that it would change. We love him. He looks to us as his family. He has his friends. He has his activities. He – this is just all he knows.

(Feb. 6, 2018 Tr. at 29-30.)

{¶ 64} When asked what L.C.C. would say if he was shown a photograph of his mother, appellee responded "[h]e would ask me who it was." (Feb. 6, 2018 Tr. at 30.)

{¶ 65} In addition to her own testimony, appellee presented the deposition of the GAL, Beck, who submitted several reports in this case. Beck first became GAL for L.C.C. in 2013, in connection with the neglect and dependency proceedings initiated by FCCS. Beck, however, did not meet L.C.C. or either of the parties prior to her re-appointment in 2017 after appellee filed the petition to adopt. According to Beck, she visited appellee's home on September 14, 2017, and in her September 14, 2017 report, she recommended that appellee maintain legal custody of L.C.C. Beck stated that if the court were to order a change of

custody, she recommended a gradual reunification with appellant in the presence of a third party.

{¶ 66} Following an October 17, 2017 interview with appellant, Beck recommended that legal custody remain with appellee and that appellant have no parenting time prior to the next scheduled hearing in the adoption case on December 22, 2017. According to Beck, L.C.C. was nearly five years of age, and he had no conception of who appellant was and no bond with appellant. Beck testified in her deposition that L.C.C. recognized appellee as the maternal figure in his life.

{¶ 67} According to Beck, appellant was in no position to be awarded custody of L.C.C. in October 2014, when the juvenile court awarded permanent custody to appellee, and that appellant's own choices since that time have prevented her from having contact with L.C.C. Beck acknowledged on cross-examination that she did not investigate appellant's drug rehabilitation efforts, but she stated that appellant could have provided her with that information at the interview.

{¶ 68} Appellant did not testify at the February 6, 2018 hearing but she did give a closing statement, under oath, as follows:

> I've never denied having a drug problem. I have fought my demons for a long time.
>
> I'm not trying to uproot my child from the only thing he knows. That's why, in juvenile court, I went for supervised visits because I don't want to take him from the home he knows. I want to reestablish, reconnect, and regrow with him over a period of time so that eventually I can bring him home, but that's going to be a long road and I understand that. The last thing I want to do is anything to hurt him. That's why he was placed with her to begin with because I couldn't.
>
> Everything is based upon the assumption if I fail. I'm doing everything I can to continue and ensure – to ensure that I don't fail, that I don't fall. I'm still in aftercare. I could have been discharged. I asked not to be because I don't think that's a good idea, especially with everything going on with the courts.

(Feb. 6, 2018 Tr. at 47-48.)

{¶ 69} When a court makes a determination in a contested adoption concerning the best interest of a child, R.C. 3107.161(B) dictates that the court shall consider all relevant factors including, but not limited to, the following:

> (1) The least detrimental available alternative for safeguarding the child's growth and development;
>
> (2) The age and health of the child at the time the best interest determination is made and, if applicable, at the time the child was removed from the home;
>
> (3) The wishes of the child in any case in which the child's age and maturity makes this feasible;
>
> (4) The duration of the separation of the child from a parent;
>
> (5) Whether the child will be able to enter into a more stable and permanent family relationship, taking into account the conditions of the child's current placement, the likelihood of future placements, and the results of prior placements;
>
> (6) The likelihood of safe reunification with a parent within a reasonable period of time;
>
> (7) The importance of providing permanency, stability, and continuity of relationships for the child;
>
> (8) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;
>
> (9) The child's adjustment to the child's current home, school, and community;
>
> (10) The mental and physical health of all persons involved in the situation.

{¶ 70} Under R.C. 3107.161(C), "[a] person who contests an adoption has the burden of providing the court material evidence needed to determine what is in the best interest of the child and must establish that the child's current placement is not the least detrimental available alternative." The trial court analyzed the evidence presented both at the hearing before the magistrate and the additional evidence presented to the trial court on February 6, 2018, in light of the factors set forth in R.C. 3107.161(B). The trial court found that

"[e]very factor for consideration contained in R.C. 3107.161(B) weighs in favor of the adoption being in the child's best interests." (Mar. 6, 2018 Decision at 22.)[11] Our evaluation of the statutory factors in light of the evidence before the trial court convinces us that the trial court did not abuse its discretion when it refused to adopt the magistrate's conclusions of law and instead concluded that the adoption by appellee was in L.C.C.'s best interest.

{¶ 71} Appellant acknowledged that appellee has provided L.C.C. with a "very nurturing, caring home" and that she is not currently in a position to do so. (May 18, 2017 Tr. at 24.) Though appellant testified in detail about her current rehabilitation efforts while serving time in the CBCF and possible scenarios where she could resume care of L.C.C. at some future date and time, the evidence shows that L.C.C. has been in the custody and care of appellee virtually his entire life. The evidence establishes that appellee is the sole maternal figure in his life and that L.C.C. has no bond with appellant. We agree with the trial court that due to the time that has elapsed since L.C.C.'s initial placement with appellee and appellant's ongoing issues with drug addiction and incarceration, there is no longer a likelihood of successful reunification with appellant within a reasonable period of time. The evidence in the record leaves little doubt that adoption by appellee is the least detrimental available alternative for safeguarding L.C.C.'s growth and development.

{¶ 72} Moreover, our review of the magistrate's decision reveals that the magistrate placed a great deal of emphasis on appellee's progress with her court-ordered counseling and treatment programs and endeavored to reach an outcome that would maintain the status quo and permit appellant to retain her parental rights. The trial court, however, placed the emphasis on the best interest of L.C.C., as is required by statutory law.

{¶ 73} This court will reverse a probate court's best-interest determination only if we find an abuse of discretion, which means that the court's decision is unreasonable, arbitrary, or unconscionable. *In re B.M.S.*, 192 Ohio App.3d 394, 2011-Ohio-714, ¶ 14 (10th Dist.), citing *In re Adoption of Ridenour*, 61 Ohio St.3d 319, 320 (1991). Based on our review of the evidence in the record, we find the trial court did not abuse its discretion when it independently reviewed the evidence presented to the magistrate and the evidence

---

[11] Citing L.C.C.'s age at the time of the hearing, neither the magistrate nor the trial court elected to take evidence regarding L.C.C.'s wishes, as set forth in R.C. 3107.161(B)(3).

produced at the February 6, 2018 hearing and reached the conclusion that adoption was in L.C.C.'s best interest.

{¶ 74} For the foregoing reasons, appellant's fifth assignment of error is overruled.

## V. CONCLUSION

{¶ 75} Having overruled appellant's five assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas, Probate Division.

*Judgment affirmed.*

TYACK and KLATT, JJ., concur.

_____