[Cite as *In re adoption of N.D.D.*, 2019-Ohio-727.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| In re: the Adoption of | : | |
| N.D.D., | | No. 18AP-561 |
| | : | (Prob. No. 567460) |
| (R.B.R., | | |
| | : | (ACCELERATED CALENDAR) |
| Appellant). | | |
| | : | |

D E C I S I O N

Rendered on February 28, 2019

**On brief:** *R.B.R.,* pro se.

APPEAL from the Franklin County Court of Common Pleas,
Probate Division

HORTON, J.

{¶ 1}  Appellant, R.B.R., is the biological father of a minor child, N.D.D., formerly known as N.T.R.  The child is the subject of adoption proceedings in the Franklin County Court of Common Pleas, Probate Division.  Appellant appeals from an order of the probate court overruling appellant's objections and adopting a magistrate's decision concluding that it is in the best interest of the minor child to be adopted by the child's stepfather, K.D. This is appellant's third appeal to this court in the matter, the first having resulted in a reversal and remand and the second resulting in an affirmance of a probate court order addressing an intermediate phase of the adoption proceedings. For the reasons that follow, we now affirm the probate court's latest judgment.

{¶ 2}  Appellant and M.D. were married in 2007 and had one child, N.D.D., in 2008. M.D. has a daughter, K.R., from a prior relationship. Appellant was found guilty of molesting and raping K.R., his stepdaughter, over a period of years when she was between the ages of 8 and 11 years old.  *See State v. Roush*, 10th Dist. No. 12AP-201, 2013-Ohio-

3162. As a result of his convictions, appellant received an aggregate prison sentence of 70 years to life. *Id.* He is currently incarcerated.

{¶ 3}    Appellant and M.D. divorced in 2013, and M.D. was awarded sole custody of N.D.D. Appellant was not awarded visitation with the child. M.D. did not request child support, as she wanted to sever all ties with appellant and appellant was not ordered to pay child support in the divorce decree. In 2013, M.D. married petitioner, K.D. Since that time, M.D., K.D., N.D.D., and K.R. have all lived together and M.D. and K.D. now have another son. The minor child, N.D.D., has not seen appellant since 2010 when the minor child was 2 years old. N.D.D. has never visited appellant in prison or talked to him on the phone. The minor child has no meaningful relationship with any of appellant's family members.

{¶ 4}    K.D. filed a stepparent petition for adoption on July 11, 2014. M.D. consented to the adoption. Ordinarily, appellant's consent would also be required pursuant to R.C. 3107.06(B)(1), but K.D. alleged in the petition that appellant's consent was not required because certain statutory exceptions applied: appellant had "failed without justifiable cause to provide more than de minimis contact with the minor or to provide for the maintenance and support of the minor as required by law or judicial decree for a period of at least one year immediately preceding either the filing of the adoption petition or the placement of the minor in the home of the petitioner." R.C. 3107.07(A). The standard for this determination is a finding by clear and convincing evidence. *Id.*

{¶ 5}    Following a hearing, the probate magistrate issued a decision on May 27, 2015 concluding that the consent of appellant to the stepparent petition for adoption was not necessary pursuant to R.C. 3107.07(A), as appellant had failed, without justifiable cause, to have more than de minimis contact with the minor in the year prior to the filing of the petition, and because appellant had failed without justifiable cause to provide maintenance and support for the minor in the year prior to the filing of the petition. Appellant filed objections to the magistrate's consent decision. The probate court overruled appellant's objections and adopted the magistrate's decision by entry dated September 22, 2015.

{¶ 6}    Appellant then filed his first appeal from the probate court's judgment to this court. On June 14, 2016, in *In re Adoption of N.T.R.*, 10th Dist. No. 15AP-955, 2016-Ohio-3427, we sustained those assignments of error that pertained to the finding that appellant

had failed to provide support for the past year. We noted that appellant had a zero-support order as part of the parties' divorce decree, and this provided appellant with a justifiable cause for his failure to provide support for the minor child. We remanded the case for the probate court to determine whether there was justifiable cause for appellant's failure to provide more than de minimis contact with the minor child for the period of time set forth in R.C. 3107.07(A).

{¶ 7} On August 5, 2016, the probate court again issued a judgment finding that the consent of appellant to the petition for adoption was unnecessary, this time relying solely on appellant's failure without justifiable cause to have more than de minimis contact with the minor in the one-year period preceding the filing of the petition.

{¶ 8} Appellant then filed his second appeal. On January 24, 2017, this court issued a decision affirming the probate court's August 5, 2016 judgment that appellant lacked justifiable cause for his failure to provide more than de minimis contact with the minor in the one year prior to the filing of the adoption petition. *In re Adoption of N.T.R.*, 10th Dist. No. 16AP-589, 2017-Ohio-265, ¶ 18 (observing that it was "appellant's own reprehensible actions with regard to the sexual abuse of his step-daughter" which were "ultimately responsible for his inability to maintain contact with his child"). The Supreme Court of Ohio and Supreme Court of the United States successively declined to hear further appeals from our decision. *In re Adoption of N.T.R.*, 149 Ohio St.3d 1435, 2017-Ohio-4396 (Table), *cert. denied sub nom R.B.R. v. K.D.*, ___ U.S. ___, 138 S.Ct. 406 (2017).[1]

{¶ 9} With our latest decision on appeal having firmly settled that adoption proceedings would not require appellant's consent, the matter was again before the probate court. On December 5, 2017, the magistrate held a hearing on the issue of the best interests of the minor child. The magistrate met with the child for an in camera interview on December 11, 2017. On March 15, 2018, the magistrate issued a decision finding that it was in the child's best interest for the stepparent adoption to be granted. The magistrate

---

[1] On November 14, 2017, appellant filed a complaint seeking a writ of mandamus or prohibition to order the respondent, the Honorable Robert G. Montgomery, Judge of the Franklin County Probate Court, to dismiss the adoption proceeding. On May 31, 2018 this court granted Judge Montgomery's motion to dismiss appellant's action. *State ex rel. Roush v. Montgomery*, 10th Dist. No. 17AP-791, 2018-Ohio-2098.

recommended that the probate court enter a final decree allowing K.D. to adopt the minor child and change the child's name to N.D.D.

{¶ 10} The magistrate noted that, regarding appellant's convictions for raping his stepdaughter, that appellant's "initial appeals have been resolved." (Mar. 15, 2018 Mag.'s Decision at 5.) Although appellant "testified that he was in the process of continuing to appeal his conviction, however, no evidence of a continuing appeal was filed." (Mag.'s Decision at 5.) The magistrate observed that K.D. was very involved in the minor's life. The magistrate observed that K.D. "helps the minor with school work, attends school conferences, and is involved in the minor's extracurricular activities" which include soccer and Boy Scouts. (Mag.'s Decision at 6.) The minor has resided with K.D. since the minor was three years old. K.D. provides for the minor financially, spiritually, educationally, and emotionally, and the minor refers to K.D. as "dad" and views K.D. as his father. (Mag.'s Decision at 6.) The magistrate observed that the minor has a close relationship with K.D.'s family, travels to K.D.'s parents' farm often, and that K.D.'s parents treat the minor as their grandson. The minor "excels in school with high grades and a perfect attendance record," is in good health, and is "mentally and emotionally very well-adjusted." (Mag.'s Decision at 7.) The magistrate noted that the minor is aware that K.D. is not his biological father. However, the minor views K.D. as his father, and "wishes to be adopted and wants his name to be the same as the man he views as his father, and the other members of his family." (Mag.'s Decision at 7.)

{¶ 11} The magistrate further noted that appellant "testified he wants what is best for the minor and hopes to be slowly reintroduced to the minor's life." (Mag.'s Decision at 7.) Appellant expressed to the magistrate that he wants the minor to remain in his current home with K.D., and that he appreciates the role that K.D. is playing in the minor's life, but that appellant does not want his own parental rights to be terminated. Appellant "testified that he would like the minor to make the decision for himself whether he wants to be adopted and change his name when he reaches the age of 18, not to have the court make the decision for him." (Mag.'s Decision at 7.)

{¶ 12} Appellant filed objections to the magistrate's decision on April 2, 2018. Appellant noted that he only received the magistrate's decision in the mail on March 26, 2018, hindering his timely filing. Appellant alleged that the magistrate had made "several

findings without [any] evidence or testimony in the record being established to support it," and thus asserted that several of the magistrate's factual findings did "not comport with the record" and were "wholly erroneous." (Apr. 2, 2018 Objs. at 1.) Appellant asserted that the only thing that would change if the adoption went through was that the minor child's last name would change and that appellant would have his parental rights terminated.

{¶ 13} Appellant stated that he had submitted "specific questions" that he wanted the magistrate to ask the minor child, but that he did not get "a response to that." (Objs. at 3.) Appellant argued that the magistrate's conclusion that the minor did not know appellant, nor desire a relationship with him, was not supported by "testimony or evidence" presented in the proceeding. (Objs. at 3.)

{¶ 14} Appellant argued that, if the court denied the petition for adoption, "the child would still have the benefit of his real biological father in his life, and would also still permit the status quo that [the minor] is under the custody of [K.D.] and the child's mother." (Objs. at 1-2.) Appellant argued that this way his father-son relationship with the child would remain intact, and K.D. would not "be deprived of serving also as the role of father to the child" along with the minor's mother, "a win-win for all parties." (Objs. at 2.) Appellant quoted from the magistrate's decision, stating that the "Magistrate asserts that the Child [N.D.D.] 'wishes to be adopted and wants his name to be the same as the man he views as his father', (Dec., p.7)." (Objs. at 4.) Appellant argued that there was no testimony or evidence to support this conclusion.

{¶ 15} Appellant also continued to argue in his objections that his consent was required to the adoption. Appellant asserted that the failure to contact the child was not his fault, but was the sole fault of the mother. (Objs. at 2.) Appellant acknowledged that the Supreme Court of Ohio had denied jurisdiction over his criminal appeal (*State v. Roush*, 137 Ohio St.3d 1440, 2013-Ohio-5678), but asserted that he would "soon be filing a federal habeas corpus challenging it further," so that the "criminal process [was] not over." (Objs. at 3.)

{¶ 16} Because the April 2, 2018 objections were not supported by a transcript, appellant sought to present the objections themselves as evidence in the form of an affidavit. These contained an introductory notation that the "[o]bjections are submitted under sworn affidavit, in lieu of transcript, under Civ.R. 53(D)(3)(b)(iii)... and this [entire]

document is an affidavit." (Objs. at 1.)  The April 2, 2018 objections close by repeating the assertion: "PAGE 6 HERETO IS AN AFFIDAVIT, AND THIS [sic.] [ENTIRE] OBJECTIONS ARE THE AFFIDAVIT." (Emphasis sic.) (Obj. at 4.)

{¶ 17} On June 27, 2018, the trial court issued a judgment entry overruling appellant's objections and adopting the magistrate's March 15, 2018 decision as its own. The court initially observed that, pursuant to Civ.R. 53(D)(3)(b)(iii), objections to a magistrate's factual findings must be accompanied by a transcript of all evidence submitted to the magistrate that is relevant to that factual finding, or be accompanied by an affidavit of evidence if a transcript is not available.

{¶ 18} The court observed that appellant "did not file a transcript of the proceedings," but instead filed his "objection fashioned as an 'affidavit,' including a page entitled 'Affidavit of Verity,' intending to be the notarization to verify that he executed a sworn affidavit." (June 27, 2018 Decision at 6.) As a transcript was not filed, the court noted that it would adopt the findings of fact of the magistrate from the magistrate's March 15, 2018 decision. The court presented and incorporated the magistrate's findings of fact from the March 15, 2018 decision.

{¶ 19} The trial court initially observed that the notarization on the "Affidavit of Verity" filed with appellant's April 2, 2018 objections to the magistrate's March 15, 2018 decision, the date of execution by the notary public was November 2, 2017. The court thus asked, "how was a document executed in objection of a magistrate's decision filed in March of 2018 notarized in November of 2017?" (Decision at 8.) Furthermore, the court observed that the affidavit purported to adopt the "foregoing 4 pages," while the "objection/affidavit [was] five pages and the notarization page [was] clearly noted with 'page 6 of 6' at the bottom of the page." (Decision at 8-9.) Thus, the court observed that "at the least, the affidavit can be considered invalid due to not being properly sworn." (Decision at 9.)

{¶ 20} The court further observed, however, that a previous document filed by appellant on November 20, 2017 also required a notarization page. The court noted that a "simple review of that page from November as compared to [R.B.R.]'s notarization page for his 'sworn affidavit' of April 2, 2018 makes it abundantly clear that [R.B.R.] presented the November 20, 2017 notarization page as the notarization for his April 2, 2018 objection so that it appeared as a properly sworn affidavit." (Decision at 9.) Accordingly, the court

observed that, by knowingly filing the document, appellant had perpetrated a fraud on the court. While the court noted that it would be appropriate to dismiss appellant's objections due to the fraudulent affidavit notarization, the court concluded that it would consider appellant's filing as an objection, but would not treat the document as a properly sworn affidavit. Accordingly, the court noted that its review was limited to whether the magistrate properly applied the law to the facts of the case.

{¶ 21} Addressing the merits, the court noted that, pursuant to R.C. 3107.161, in determining the best interests of the child the court was to consider the relevant factors in R.C. 3107.161(B). The court observed that a person who contests an adoption has the burden of providing the court material evidence needed to determine what is in the best interest of the child and must establish that the child's current placement is not the least detrimental available alternative. R.C. 3107.161(C). Pursuant to the court's independent review, the court concluded that the facts and the statutory factors demonstrated that it was in the best interest of the minor to be adopted by K.D.

{¶ 22} Reviewing the magistrate's findings of fact, the court observed that the minor had not seen appellant since the minor was two years old, and that the minor had no relationship with appellant or any extended family on appellant's side. Further, the minor wished to be adopted by K.D. The court observed that, although appellant "repeatedly attacked the magistrate's findings in this particular area of testimony," the court found "no error in the magistrate's decision to conduct an in camera interview with the minor outside the presence of the parties." (June 27, 2018 Decision at 13.) The court noted that appellant's request that the magistrate pose "interrogatories" to the minor child was "wholly inappropriate in this case and demonstrating a lack of insight into appropriate interactions with the minor in this matter." (Decision at 13.) Furthermore, the court observed that, due to appellant's lengthy prison sentence, it was unlikely that the minor could enter into a more stable and permanent relationship with appellant in the near future, or possibly, at any point in time. The court also noted that appellant's convictions for raping his stepdaughter triggered acknowledgment of R.C. 3107.161(B)(11). The court observed that, although appellant had "demanded judicial notice of his criminal appeal, he ha[d] provided no notice of such and the appellate case that he cites, 12AP-201, shows on the docket as being closed

as of the date of this entry." (Decision at 14.) Thus, the court noted that it was very unlikely that the minor could safely reunify with appellant.

{¶ 23} The court observed that the "length of time the minor has been a part of this family unit with the petitioner and the fact that the minor is flourishing in this family is important to demonstrate why it would be in the child's best interest to grant the adoption." (Decision at 14.) The court noted that the adoption would "provide permanency and stability, and also formalize the continuity of relationships the minor has with the petitioner and his extended family." (Decision at 14-15.) The court observed that appellant agreed that K.D. had done a good job of raising the minor and that appellant did not want the minor's placement to change. The court further noted that, beyond simply terminating appellant's parental rights and changing the minor child's last name, the adoption would provide the minor with the:

> [P]ermanency that would complement the stability of the relationship the petitioner established and maintained with him over the last six years. The petitioner has provided the minor with a home in which he has flourished and the granting of this adoption would acknowledge that continuing in this environment is in the child's best interest. It would make the only man he has ever known to be a father figure his official legal father, with all of the rights of a child born to him biologically. It would ensure that the minor's relationship with the man he calls his father would continue, regardless of the petitioner's relationship with the minor's mother. The minor is already bonded to the petitioner * * *; the changing of the minor's name would officially make him a member of the family to which he already is a part.

(Decision at 15-16.)

{¶ 24} The court observed that appellant "failed to provide evidence of an alternative scenario that would trump the minor's current situation," and further noted that it was "extremely concerning" that appellant continued to refuse any responsibility for the lack of relationship he has with the minor. (Decision at 16.) The court noted that, although appellant continued to assert that his failure to have contact with the minor child was the sole fault of M.D., appellant refused "to acknowledge the relationship of his victim to the minor and the minor's mother, and the convictions that led to his incarceration as being significant factors in the current state of the non-relationship with his son." (Decision at

16.) The court concluded that all of the R.C. 3107.161 factors demonstrated that the minor was doing extremely well in a loving family that provides the least detrimental alternative in the case. Thus, on a thorough and independent review of the matter, the court concluded that it would be in the child's best interest for the adoption by the petitioner to be granted. Accordingly, the court overruled appellant's objections and adopted the magistrate's decision as its own.

{¶ 25} Appellant appeals, presenting the following sole assignment of error for our review:

> PROBATE COURT ERRED AS A MATTER OF LAW IN HOLDING THE AFFIDAVIT TO BE FRAUDULENT AND THUS FAILING TO REVIEW DE NOVO THE MAGISTRATE'S FACTUAL FINDINGS WHICH WERE WHOLLY ERRONEOUS.

{¶ 26} Appellant asserts that the probate court refused to consider his factual objections to the magistrate's factual findings, after the court concluded that the affidavit filed with the objections was fraudulent. Appellant asserts that the trial court violated due process by failing to review de novo appellant's factual objections to the magistrate's decision under Civ.R. 53(D)(3)(b)(iii). Appellant also challenges the court's final decision to grant the adoption petition.

{¶ 27} When objections are filed to a magistrate's decision, the trial court must undertake an independent de novo review of the matters objected to in order "to ascertain [whether] the magistrate has properly determined the factual issues and appropriately applied the law." Civ.R. 53(D)(4)(d). *See also James v. My Cute Car, LLC*, 10th Dist. No. 16AP-603, 2017-Ohio-1291, ¶ 13. "The standard of review on appeal from a trial court judgment that adopts a magistrate's decision varies with the nature of the issues that were (1) preserved for review through objections before the trial court and (2) raised on appeal by assignment of error." *In re Guardianship of Schwarzbach*, 10th Dist. No. 16AP-670, 2017-Ohio-7299, ¶ 14; *Feathers v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 16AP-588, 2017-Ohio-8179, ¶ 10. The extensive nature of appellant's objections below ensure that he has preserved most issues for appellate review. The standard we apply to the trial court's consideration of his affidavit, as a question of law, is de novo. *Schwarzbach* at ¶ 14. In contrast, the standard of review applied to a trial court's grant or denial of an adoption

petition based on the best interest of the minor child is whether the trial court abused its discretion. *In re L.L.C.*, 10th Dist. No. 18AP-167, 2018-Ohio-4617, ¶ 56.

{¶ 28} We first consider the trial court's treatment of appellant's "affidavit" evidence. Civ.R. 53(D)(3)(b)(iii) obligates a party objecting to a factual finding in a magistrate's decision to support those objections with "a transcript of all the evidence submitted to the magistrate relevant to that finding or an affidavit of that evidence if a transcript is not available." The objecting party shall file the transcript or affidavit within thirty days after filing objections. *Id.* If the objecting party fails to submit a transcript or affidavit, the trial court must accept the magistrate's factual findings and limit its review to the magistrate's legal conclusions. *Wallace v. Grafton Corr. Inst.*, 10th Dist. No., 11AP-304, 2011-Ohio-5661, ¶ 4-5. Moreover, in an appeal from a judgment rendered without a transcript, this court only considers whether the trial court correctly applied the law to the magistrate's factual findings. *Id.*

{¶ 29} As noted by the trial court, appellant signed the objections document and dated it March 29, 2018. The proof of service on the document stated that service was accomplished on March 29, 2018. However, the "Affidavit of Verity" attached to the sixth page of the document states that, in accordance with R.C. 2969.25 and 2969.26, appellant certified that the information on the affidavit was true and correct, and that the "foregoing 4 pages is hereby adopted and verified by this affidavit." The notary seal, acknowledging appellant's signature on the "Affidavit of Verity" is dated November 2, 2017, in direct contradiction of his preceding signature date of March 29, 2018.

{¶ 30} A review of the record demonstrates that the "Affidavit of Verity" appellant attached to his objections purporting to verify the factual statements in his objections was the affidavit of verity from appellant's November 20, 2017 complaint for a writ of mandamus and/or prohibition. Attached to the complaint appellant filed an "Affidavit of Prior Civil Action under O.R.C. § 2969.25," stating that he attests that he has no other past civil actions against a government entity or employee. (Compl. for Mandmaus/Prohibition at 4.) After the fourth page appears the affidavit of verity, stating that the foregoing four pages are hereby adopted and verified by this affidavit.

{¶ 31} Appellant argues that, pursuant to S.Ct.Prac.R. 3.06(A), that affidavits are valid for a period of six months from the date subscribed. Appellant admits that he executed

"under notary an oath or affirmation [before] the date that the Magistrate actually issued the Decision, as the record herein will plainly show." (Appellant's brief at 1.) Nevertheless, appellant asserts that the affidavit is "completely valid" and that the fact that he "executed it [before] the Magistrates [sic] ruled is of no legal consequence." (Appellant's brief at 1.) Appellant argues that because he attested in the affidavit that the "foregoing was true and correct," he "was not required to, physically show the 'foregoing pages' to the Notary." (Appellant's brief at 1.) Appellant contends that if he had "waited for a notary after the Magistrate ruled, [he] would have never made the objections within the 14 day requirement, Because [the prison] would have caused [him] to wait several days to get notary service." (Notice of Appeal.)

{¶ 32} None of these arguments undermine the probate court's conclusion that appellant's objections in their entirety could not be considered as affidavit evidence. S.Ct.Prac.R. 3.06 applies to affidavits of indigence filed before the Supreme Court of Ohio. It is a rule of practice in that forum, and has no bearing on the validity of an evidentiary affidavit filed before a trial court. Affidavits under R.C. 2969.25 attesting to an inmate's prior civil actions are special procedural requirements for inmate litigants and likewise have no relation to an evidentiary submission under Civ.R. 53(B)(3)(d)(iii).

{¶ 33} "An affidavit must appear, on its face, to have been taken before the proper officer and in compliance with all legal requisites. A paper purporting to be an affidavit, but not to have been sworn to before an officer, is not an affidavit." *In re Disqualification of Pokorny*, 74 Ohio St.3d 1238 (1992); *accord Pollock v. Brigano*, 130 Ohio App.3d 505, 509 (12th Dist.1998). As set forth conclusively above, the document presented to a notary by appellant for attestation in November 2017 was not the document he attempted to submit as evidence before the trial court in March 2018. The trial court properly excluded the evidentiary aspect of appellant's objections, and properly considered this pleading solely for its legal arguments.

{¶ 34} We will only briefly address appellant's due process arguments, since our legal conclusion regarding the state of appellant's "affidavit" evidence disposes of them.

{¶ 35} The Due Process Clause contained in the Fourteenth Amendment to the U.S. Constitution states no state shall "deprive any person of life, liberty, or property, without due process of law." The Due Course of Law Clause in Article I, Section 16 of the Ohio

Constitution provides "[a]ll courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay." The two clauses provide equivalent due process protections. *State v. Hand*, 149 Ohio St.3d 94, 2016-Ohio-5504, ¶ 11, citing *Direct Plumbing Supply Co. v. Dayton*, 138 Ohio St. 540, 544-45 (1941).

{¶ 36} "For all its consequence, 'due process' has never been, and perhaps can never be, precisely defined." *Lassiter v. Dept. of Social Servs.*, 452 U.S. 18, 24-25 (1981). Unlike some legal rules, due process is not "a technical conception with a fixed content unrelated to time, place and circumstances." *Cafeteria & Restaurant Workers Union, Local 473, AFL-CIO, et al. v. McElroy*, 367 U.S. 886, 895 (1961). "Rather, the phrase expresses the requirement of 'fundamental fairness,' a requirement whose meaning can be as opaque as its importance is lofty." *Lassiter* at 25. Thus, due process is "a flexible concept that varies depending on the importance attached to the interest at stake and the particular circumstances under which the deprivation may occur." *State v. Aalim*, 150 Ohio St.3d 489, 2017-Ohio-2956, ¶ 22, citing *Walters v. Natl. Assn. of Radiation Survivors*, 473 U.S. 305, 320 (1985). The fundamental requirements of due process are notice and the opportunity to be heard at a meaningful time and in a meaningful manner. *Matthews v. Eldridge*, 424 U.S. 319, 333 (1976), citing *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965).

{¶ 37} Our detailed review of the proceedings as outlined above establishes that appellant was not deprived of due process of law in this case. He had notice of the hearings and was given meaningful opportunities to be heard. The requirements for evidentiary support when presenting objections are not obscure or difficult to fulfill in affidavit form. The probate court was manifestly prepared to consider the substance of appellant's objections had they been properly supported. In practice, despite the court's evident dismay when confronted with appellant's flawed affidavit, the probate court conducted its evidentiary review with some acknowledgement of the concerns raised by that evidence. There was no lack of due process in these proceedings.

{¶ 38} Turning to appellant's assertion that the court erred in assessing the minor child's best interest, when a court makes a determination in a contested adoption concerning the best interest of a child, R.C. 3107.161(B) mandates that the court shall consider all relevant factors including, but not limited to, the following:

(1) The least detrimental available alternative for safeguarding the child's growth and development;

(2) The age and health of the child at the time the best interest determination is made and, if applicable, at the time the child was removed from the home;

(3) The wishes of the child in any case in which the child's age and maturity makes this feasible;

(4) The duration of the separation of the child from a parent;

(5) Whether the child will be able to enter into a more stable and permanent family relationship, taking into account the conditions of the child's current placement, the likelihood of future placements, and the results of prior placements;

(6) The likelihood of safe reunification with a parent within a reasonable period of time;

(7) The importance of providing permanency, stability, and continuity of relationships for the child;

(8) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

(9) The child's adjustment to the child's current home, school, and community;

(10) The mental and physical health of all persons involved in the situation.

{¶ 39} Under R.C. 3107.161(C), "[a] person who contests an adoption has the burden of providing the court material evidence needed to determine what is in the best interest of the child and must establish that the child's current placement is not the least detrimental available alternative."

{¶ 40} Again, this court will reverse a probate court's best-interest determination only if we find an abuse of discretion, which means that the court's decision is unreasonable, arbitrary, or unconscionable. *In re B.M.S.*, 192 Ohio App.3d 394, 2011-Ohio-714, ¶ 14 (10th Dist.), citing *In re Adoption of Ridenour*, 61 Ohio St.3d 319, 320 (1991). Based on our above lengthy review of the evidence in the record and the probate court's assessment of it, we

find the trial court did not abuse its discretion when it independently reviewed the evidence presented to the magistrate. It is unnecessary to reiterate the evidence set forth at length above, nor to revisit the probate court's detailed conclusions drawn therefrom and applied to the R.C. 3107.161(B) factors. The probate court did not abuse its discretion when it determined that adoption was in the best interest of the minor child.

{¶ 41} In summary, the trial court did not err in its refusal to accept appellant's flawed affidavit and in its assessment of the factors impacting the minor child's best interest. We overrule appellant's assignment of error and affirm the decision of the Franklin County Probate Court.

*Judgment affirmed.*

KLATT, P.J. and BRUNNER, J., concur.

———————————————